Merrimack, }
June, 1895. }

STATE (*ex rel. Thorndike & a.*) *v.* COLLINS *& a.*

In proceedings for the abatement of a liquor nuisance, evidence of the presence of saloon paraphernalia, men drinking, and barrels containing liquor, on the day the petition was filed, and of repeated sales for eleven months prior to that date, is competent to show the use of the premises.

Evidence that the owner of a building lived for several years over that part long occupied as a saloon, and had a place of business in plain view of the rear entrance thereof, is competent to show his knowledge of such use.

A blank application for a United States license, procured from the internal revenue bureau, which states the meaning of abbreviations used therein, is admissible to explain similar abbreviations in the record of a collector already in evidence.

A petition for an injunction under the nuisance act is a civil proceeding. The issues are to be determined upon the balance of probabilities, and a defendant who does not testify in his own behalf is not protected from adverse comment and inference.

PETITION, of twenty legal voters of Concord for the abatement of an alleged liquor nuisance, under P. S., c. 205, ss. 4, 5, filed March 2, 1894. Verdict for the state.

Evidence was introduced tending to show that the premises described in the petition, on March 2, 1894, were used by the defendant Collins for the illegal sale of liquor, with the permission and by the sufferance of the defendant McShane. At the close of the state's evidence, the defendants moved for a nonsuit and for a verdict. The motions were denied, and the defendants excepted.

The defendants introduced no evidence, but excepted to evidence admitted, the argument of counsel, and the charge of the court, as follows :

Witnesses were permitted to testify that they were on the premises, March 2, 1894, and saw there bottles, glasses, a bar, a bartender, men drinking at the bar, and barrels in the cellar

which Collins told them contained liquor. A witness testified that about two months before March 2, 1894, he was on the premises, and "saw two men behind the bar selling out the rum pretty fast." The use of the premises and sales of liquor prior to March 2, 1894, and as remote as April 20, 1893, were shown, without any direct evidence that the sales were made by Collins, or under his direction, or with the knowledge of either Collins or McShane.

Thorndike, one of the petitioners, testified that he examined the records of the internal revenue collector at Portsmouth, and made a copy thereof, as follows: "Collins, J. M., W. M. L. D., Concord, July 1, 1893, $50, July 14, 1893, No. 2189, 13 Warren St." "Collins, J. M., R. L. D., Concord, July 1, 1893, $25, July 14, 1893, No. 7277, 13 Warren St." There was no other evidence tending to show that Collins had paid a special revenue tax. Wheeler, another petitioner, who was not in any way connected with the internal revenue bureau, testified that he received from an official of that bureau at Washington, D. C., a blank application for a license, which gave the rules for filling the same and the definition of the abbreviations used; and he read that portion of the blank showing that the letters "R. L. D." stand for retail liquor dealer, and "W. M. L. D." for wholesale malt liquor dealer.

The clerk of the Concord police court testified that the record of that court showed the conviction of Collins for illegally selling liquor on May 20 and August 26, 1893; but the record did not show, nor was there any evidence, that such sales were made on the premises described in the petition, except that Collins had no other saloon in Concord. On August 26, 1893, Collins' plea was *nolo contendere.*

It appearing that the liquors seized on March 2, 1894, as the property of Collins were returned to him as claimant by order of the court, the libel in *State* v. *Spirituous Liquors*, Collins' motion to dismiss in which he was alleged to be the owner, the agreed case, and the opinion of the court therein, were introduced in evidence.

In his closing argument, the state's counsel commented upon the fact that the defendants did not testify, argued that their silence was to be considered and weighed against them, and remarked that if the defendants were doing a legitimate business they could have taken the stand and explained it. The court instructed the jury that, the action being civil and not criminal, the result was to be determined upon a balance of probabilities, and further said: "The defendants have put in no evidence whatever, and therefore the only question is whether the evidence before you makes it more probable than otherwise that the allegations of the petition are true; and in weighing the tes-

timony, you may properly consider the fact that the defendants have not testified in their own behalf, and give it such weight as you may deem it to be entitled."

*William H. Sawyer* and *Burleigh & Adams*, for the state.

*John M. Mitchell* and *Albin, Martin & Howe*, for the defendants.

CLARK, J. There was evidence tending to show that the premises described in the petition, on March 2, 1894, were used by the defendant Collins for the illegal sale of liquor, with the permission and by the sufferance of the defendant McShane. This was sufficient to sustain the denial of the motions for a non-suit and for direction of a verdict for the defendants. The evidence was properly submitted to the jury.

The evidence of witnesses who testified that they were on the premises on March 2, 1894, and saw bottles, glasses, a bar, a bartender, men drinking at the bar, and barrels which Collins told them contained liquor, was competent and material upon the question of the use of the premises which was submitted to the jury. The evidence of the witness who testified that he was on the premises two months before March 2, 1894, and "saw two men behind the bar selling out the rum pretty fast," and that as to the use of the premises for the sale of liquor prior to March 2, 1894, and as remote as April 20, 1893, was also competent on the question of use. While it was not directly shown that the sales prior to March 2, 1894, were made by Collins, or under his direction, or with the knowledge of either Collins or McShane, there was evidence that Collins had long used a part of the building for a saloon, over which McShane had lived for several years, and that the latter occupied a place of business near the saloon and in plain view of its rear entrance. Upon all this evidence, it was for the jury to determine by whom the sales between the dates mentioned were made, and whether the premises were used for the illegal sale of liquor during that time, with the knowledge of McShane. The question whether evidence of sales prior to March 2, 1894, should have been excluded on the ground of remoteness was one of fact to be determined by the presiding justice.

Thorndike testified that he examined the records of the internal revenue collector at Portsmouth, and made a copy thereof, which he produced and read to the jury. The copy showed that Collins had paid the special revenue tax as a wholesale malt liquor dealer and as a retail liquor dealer, at 13 Warren street, Concord, from July, 1893, to July, 1894. In *State* v. *Loughlin*, 66 N. H. 266, evidence of the same character regarding the same public record was offered, and it was held that a public

record may be proved by an examined copy sworn to by an unofficial witness. In *State* v. *Loughlin*, it appears that the records of the internal revenue collector are required by law to be kept open to public inspection, and that the collector cannot remove them or furnish copies. The evidence of Thorndike as to his examination of the record and the copy made by him, were competent to show that Collins had paid the special tax. *State* v. *Loughlin, supra; Whitehouse* v. *Bickford,* 29 N. H. 471. If it were necessary to show the impossibility of producing the original record in order to render the copy admissible, that could be done now. So, also, the testimony of Wheeler was properly admitted. The blank application for a United States license procured from the internal revenue bureau, showing the rules for filling out the same and the definition of the abbreviations used, came from the proper source, and was competent to explain the corresponding abbreviations which appeared in the copy of the record testified to by Thorndike.

The record of the police court was competent to show illegal sales of liquor by Collins in Concord. There was evidence that Collins had no place of business in Concord other than that on the premises described in the petition; and whether the sales on May 20 and August 26, 1893, were made on those premises, was for the jury to determine. The judgment was the material fact shown by the record. It is immaterial whether the plea was guilty, not guilty, or *nolo contendere. State* v. *Fagan,* 64 N. H. 431.

It having been shown that the liquors seized on March 2, 1894, were subsequently returned to Collins as claimant by order of court, the evidence of what he did in the action *State* v. *Spirituous Liquors, ante, p.* 47, was admissible as an admission and claim on his part.

A petition for an injunction under the nuisance act, so called, is a civil proceeding. *State* v. *Saunders,* 66 N. H. 39; *Rancour's Petition,* 66 N. H. 172. This fact is an answer to the defendants' exception to the argument of counsel and charge of the court. Being a civil proceeding, the questions at issue were to be determined upon the balance of probabilities, and the jury were at liberty to draw such inferences as they reasonably might from the fact that the defendants did not testify. *Carter* v. *Beals,* 44 N. H. 408, 413.

*Exceptions overruled.*

BLODGETT, J., did not sit: the others concurred.