THE STATE OF KANSAS V. GUY H. NIPPERT.

No. 14,743.    (86 Pac. 478.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Evidence—Records of United States Revenue Collector.* On the trial of a person charged with the violation of the prohibitory law a copy of the record in the office of the United States revenue collector, taken by a person other than the custodian of such record, and by him sworn to be a true copy, is admissible as evidence tending to show that the defendant is engaged in the business of a retail liquor dealer.

2. —— *Public Document — Explanatory Evidence.* Where such evidence has been admitted it will not be deemed erroneous also to admit blank form No. 11, used in the United States revenue service, for the purpose of explaining the meaning of the letters "R. L. D." used in the copy of the record already in evidence.

3. —— *Judicial Notice.* The significance of the letters "R. L. D.," when used in the records of the office of the United States revenue collector, is so well and generally known that courts may take judicial notice thereof.

Appeal from Mitchell district court; RICHARD M. PICKLER, judge. Opinion filed July 6, 1906. Affirmed.

*C. C. Coleman,* attorney-general, *F. S. Jackson,* assistant attorney-general, and *F. J. Knight,* county attorney, for The State; *J. E. Tice,* and *Ira N. Tice,* of counsel.

*C. L. Kagey,* and *R. M. Anderson,* for appellant.

The opinion of the court was delivered by

GRAVES, J.: The defendant was convicted in the district court of Mitchell county of keeping and maintaining a nuisance in violation of what is known as the prohibitory law, and he appeals to this court. In the district court a motion of the defendant to require the state to make the information more definite and certain was denied. A motion was then made to quash the information, which was also denied. The objec-

tionable features of the information will appear from the following quotations therefrom:

"Then and there unlawfully did keep and maintain and aid, abet and assist in keeping and maintaining a place where . . ., and where intoxicating liquors were and are kept . . . on the 26th day of June, 1905, . . . did keep, . . . said liquors and property are kept . . ."

It is contended that the defendant is entitled to know whether he is to be tried for keeping and maintaining the nuisance or merely for aiding and abetting therein. It is also claimed that several offenses are charged in the same count. This court has already decided these questions against the contention of the defendant in several cases, among which are *The State v. Schweiter,* 27 Kan. 499; *The State v. Clark,* 60 Kan. 450, 56 Pac. 767; *The State v. Bush,* 70 Kan. 739, 79 Pac. 657.

On the trial the court admitted as evidence, for the purpose of proving that the defendant was paying a special tax as a retail liquor dealer under the United States revenue law, a copy of the record kept in the office of the United States revenue collector for the district of Kansas, at Leavenworth, Kan., which was sworn to as a true copy by the witness who made it, but was not otherwise authenticated. As a foundation for this evidence it was shown that the officers having the custody and control of the records refused to give copies thereof or to certify to or authenticate them in any manner, but permitted the witness to make copies as desired.

By section 3238 of the Compiled Statutes of the United States, 1901, the commissioner of internal revenue is authorized to make all needful regulations concerning the performance of the duties imposed by that section. In pursuance of this authority regulations were promulgated directing collectors and their deputies to refuse to produce the records of their offices, or to give any information in relation thereto, in liquor

prosecutions in state courts. In the state of Vermont Arthur L. Weeks, a deputy collector of internal revenue, refused to produce the records of his office when a witness in a state court, and was committed for contempt. The United States district court released him on a writ of *habeas corpus.* In that case (*In re Weeks,* 82 Fed. 729) the court held:

"An instruction issued by the commissioner of internal revenue, directing collectors and their deputies to refuse to produce, in criminal prosecutions of liquor dealers in the state courts, the returns made to the collectors, or the lists showing payments of federal liquor taxes, or to give information derived from official sources as to the fact of such payments, is valid, and in accordance with the federal laws.

"A state has no right to federal instruments of purely federal character for proof, unless they are left within its reach." (Syllabus.)

Since these officers cannot be compelled to produce the original records, nor furnish certified copies thereof, it follows that the originals are not the best evidence which can be produced in a state court. We think this copy admissible. Neither the original nor a certified copy thereof was obtainable. Recourse to secondary evidence was therefore necessary, and under such circumstances secondary becomes the best evidence.

At common law such evidence, under such circumstances, was always admissible. In fact, sworn copies were generally regarded as of equal value with copies certified to by the legal custodian of the original document or record. The common-law rule in this respect has not been displaced by the statutes authorizing other methods of proof. These statutes are simply declaratory of the common law. (2 Wig. Ev. § 1273 (1) ; *State v. Spaulding,* 60 Vt. 228, 233, 14 Atl. 769; *State v. White,* 70 Vt. 225, 39 Atl. 1085; 1 Greenl. Ev., 16th ed., § 485; *Transit Co. v. Shacklet,* 119 Ill. 232, 10 N. E. 896; *Blackman v. Dowling,* 57 Ala. 78; *The*

*State v. Pendleton,* 67 Kan. 180, 72 Pac. 527; *The State v. Schaeffer, post.*)

The only way in which the character of the business for which the defendant paid tax was indicated in the copy of the record admitted in evidence was by the use of the letters "R. L. D." The state, for the purpose of showing what these letters indicated when used in the revenue records, offered a blank form of application, known as form No. 11, United States internal revenue, prepared by and used in the revenue department. To this blank is attached a memorandum explaining the meaning of letters and abbreviations which applicants are permitted to use, from which it appears that "R. L. D." means "retail liquor dealer." This blank was admitted in evidence without any identification or authentication, and the defendant urges that this ruling of the court was erroneous. The blank shows on its face that it was printed to be used in the revenue service and is furnished by the revenue department to all persons desiring to use the same. It is claimed by the state that this blank is admissible under section 4824 of the General Statutes of 1901, which reads:

"Public documents, purported to be edited or printed by authority of congress, or either house thereof, shall be evidence to the same extent that authenticated copies of the same would be."

Congress authorized the preparation of blank forms for use in the revenue service, and this one was evidently published in pursuance of such authority. In some cases this blank has been received in evidence to prove the fact to establish which it was here offered. (*State v. Collins,* 68 N. H. 299, 44 Atl. 495; *State v. White,* 70 Vt. 225, 39 Atl. 1085.) Whether admissible or not, no prejudicial error could have resulted from its having been admitted in evidence. We think these letters have been used in connection with the revenue business to such an extent that their meaning has become a

part of our common knowledge and needs no proof. The significance of these letters, when used to indicate the business for which a person pays special tax under the internal revenue law, is as well known as the meaning of the letters "f. o. b." when used in a shipping contract. The trial court might well have excluded the blank, taken judicial notice of the meaning of the letters, and defined them to the jury in its instructions, but having permitted this proof no material assignment of error can be predicated thereon.

On the trial the court gave to the jury an instruction which reads:

"The state is not required to prove in the first instance that the defendant did not have a permit. If it has not been shown by the evidence that the defendant had a permit he is presumed not to have had such authority."

In view of the way this case was finally submitted to the jury the question whether the defendant had a permit or not is immaterial. The instruction was unnecessary and inapplicable. The evidence did not require an instruction on that point. The objection to the instruction does not therefore raise the question whether it was good law or not, but it only presents the question whether, being immaterial, it was prejudicial to the rights of the defendant.

The information contained four counts, two of which were for keeping and maintaining a nuisance and two for unlawful sales. The court evidently prepared its instructions with the view that the case would be submitted upon the whole information, and when the state rested and was required to elect upon which count it would rely, and the election was made upon the first count, which was for keeping a nuisance, and the parties both rested, the instruction objected to was overlooked in revising the charge to make it fit the case as then presented. Only druggists can hold permits. A druggist's permit in the hands of a person

whose only business is selling intoxicating liquors as a beverage, in a "joint," is beyond the scope of legal contemplation. Under the evidence in this case the intoxicating liquors kept at the defendant's house were kept to be used and sold as a beverage only, and, therefore, the question of permit cannot arise. We are unable to see how the instruction objected to could have been prejudicial to the rights of the defendant.

It is claimed that the jury, while in charge of a bailiff, and when going to a church to view the remains of a prominent citizen there lying in state, passed by the defendant's place of business. The jury passed without stopping, investigating or discussing the appearance of the premises. The building was about twenty-five yards from the walk, and behind a large bill-board which practically hid it from sight. We see no error in anything shown to have transpired here.

It is further claimed that one of the jurors was coerced into voting for the defendant's conviction on account of sickness and to avoid being kept out over night. The juror testified that he would not have voted guilty except for the purpose of being released. He did not send word to the court that he was unwell and unable to remain out another night. He made no complaint to the bailiff. He did not seek the advice of a physician or propose to get medicine of any kind. When released he walked about the streets for several hours, and then went to bed and slept well all night, and was about town the next day as usual. The only statements made by him that he was ill were made to his fellow jurors in explanation of his vote for conviction. To them at that time he claimed that he was sick and unable to remain up all night and that he voted as he did to get out of the jury-box. When the jury were polled he stated that the verdict was his, and that he still agreed to it, and make no explanation concerning his illness. The trial court, after hearing the evidence produced on the hearing of the motion for a

new trial, found that this juror requested the ballot to be taken which resulted in the conviction of the defendant at a time when word had been sent to the court that the jury could not agree, and when the jury were expecting to be called into court and discharged; and that the juror voted as he did voluntarily and not because of his illness. The motion for a new trial was properly denied.

The judgment of the district court is affirmed.

All the Justices concurring.