[Civ. No. 6129.   Third Appellate District.—October 14, 1938.]

ARTHUR H. SAMISH, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

Anthony J. Kennedy and Howe, Hibbit & Johnston for Petitioner.

Otis D. Babcock, District Attorney, and George M. Naus for Respondents.

THOMPSON, J.—This is a petition for a writ of prohibition to restrain the grand jury and the prosecuting officers of Sacramento County from obtaining possession by subpoena or otherwise of copies of petitioner's income tax statements for the years 1935, 1936 and 1937, and from compelling a disclosure of the contents thereof, the originals of which are filed with the state and federal governments for taxation purposes. These copies are sought to be used by the grand jury as evidence in its investigation of alleged lobbying and bribery of members of the state legislature. The respondents have demurred to the petition, and also filed an answer denying the material allegations thereof.

The petitioner asserts that the copies of his income tax statements are incompetent as evidence for the reasons that the grand jury is without jurisdiction or authority to investigate general accusations of misconduct on the part of members of the state legislature in the absence of specific charges against particular individuals, and that the information contained in the income tax statements is privileged by the express terms of the state and federal statutes.

We are of the opinion the grand jury of Sacramento County is authorized by law to investigate substantial charges of lobbying or bribery of state legislators occurring within that county, or of any charge of conspiracy to commit those crimes when an overt act in the performance thereof is

accomplished within the county as specified by section 184 of the Penal Code. The proceedings in this case are sufficiently specific to authorize the grand jury to investigate the charges of lobbying or bribery of state legislators by any individual within that county. It is not necessary that formal charges of specific offenses shall first be made against particular named individuals to authorize a grand jury to institute an investigation thereof. ■ One of the chief purposes of a grand jury is to investigate and ascertain whether crimes have been committed within the borders of its county and to institute criminal prosecutions thereof. A grand jury is not deprived of jurisdiction to investigate asserted public offenses merely because its members are uncertain as to whether a crime was actually committed, whether it was really committed within the borders of the county, or because of a lack of identity of the particular individual who perpetrated the crime. If it should develop after a thorough investigation by a grand jury that the alleged crime was really committed in another county that does not render the proceedings invalid or void, but merely precludes the presenting of an indictment therefor in that county. ■ Of course, investigations of grand juries should be conducted in good faith with reasonable cause to believe that they possess jurisdiction to inquire into the asserted offenses. A grand jury may not interfere in the private affairs of individuals or organizations when it knows it is without jurisdiction to investigate or act with relation thereto. It has been said a grand jury should not engage in "fishing expeditions" or indiscriminate meddling with public or private affairs in which it is without jurisdiction to act or to investigate. (*Hale* v. *Henkel*, 201 U. S. 43 [26 Sup. Ct. 370, 50 L. Ed. 652].) But when grand jurors possess personal knowledge or are furnished with reliable information indicating that a crime has been committed by someone within the borders of the county, it is the duty of the grand jury to fearlessly and fairly investigate the charges and indict the culpable party if the evidence warrants that finding. (*Blair* v. *United States*, 250 U. S. 273 [39 Sup. Ct. 468, 63 L. Ed. 979]; *United States* v. *Philadelphia & R. R. Co.*, 225 Fed. 301; 22 A. L. R. 1356, note; 106 A. L. R. 1384, note.)

In the Blair case, *supra,* discussing the rights of a grand jury to investigate crime, Mr. Justice Pitney said:

"It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety, or forecasts of the possible result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."

In the case of *United States* v. *Philadelphia, etc., supra,* the court said:

"The power of the grand jury extends to the broadest kind of an inquisitorial proceeding, and it may, before a bill of indictment is framed, investigate at the instance of the court or the district attorney, or at its own instance, a suspected or an alleged crime, and determine whether it has been committed, and, if so, who committed it. The grand jury has jurisdiction to proceed under its inquisitorial powers without any specific charge against a particular person or corporation being before it."

The grand jury has authority and it becomes its duty to inquire into all public offenses "committed or triable in the county" in which the jury is impaneled. (Secs. 915, 923, Pen. Code.) Section 915 provides:

"The grand jury may inquire into all public offenses committed or triable within the county, and present them to the court by indictment."

Section 923 provides in part:

"The grand jury must inquire . . . into the willful or corrupt misconduct in office of public officers of every description within the county."

Section 903 of the Penal Code prescribes the form of oath to be administered to the grand jury which clearly contemplates an investigation of all public offenses "committed or triable within this county".

██ In the present case accusations of lobbying and bribery of state legislators were formally made by the legislature. Those charges were recorded in its records and a copy thereof

was sent to the district attorney of Sacramento County. The judge of the superior court of that county took cognizance of that accusation and presented the matter to the attention of the grand jury with an order to proceed to investigate the charges in open session as provided by section 925a of the Penal Code.

Courts will take judicial notice of the official acts of the legislature. (Sec. 1875, Code Civ. Proc.) May 27, 1937, the state senate adopted a resolution, concurred in by the assembly the same date, asserting that statements had been made "to the effect that corruption exists within the membership of the legislature, and that persons have attempted to influence legislation by resorting to improper methods and means". The resolution then enjoins each member of the legislature to promptly furnish to the officers any information which he may possess "as to the commission or asserted commission of *any criminal offense* by another member of the Legislature", and declares that it is . the duty of the attorney-general and the district attorney of the county in which the offense was committed to investigate and vigorously prosecute such "criminal offenses". The Daily Journal of the senate shows that a motion was carried on the last-mentioned date to transmit a copy of the above resolution to "the district attorney of Sacramento County". We may assume that was done. Pursuant to that information and resolution, and in accordance with the provisions of section 925a of the Penal Code, the judge of the Superior Court of Sacramento County directed the grand jury to investigate in open session the alleged charges of lobbying and bribery of members of the state legislature. The court said in that regard:

"It appearing to the Court and the Court finding that the subject of the investigation by the Grand Jury of the County of Sacramento, State of California, relative to certain matters *respecting the alleged corruption,* misfeasance or malfeasance in office or dereliction of duty of public officials, to-wit: Members of the Legislature of the State of California, is one affecting the general public welfare;

"It Is Therefore Ordered that said session or sessions of the Grand Jury of the County of Sacramento, State of California, relative to the investigation of the above mentioned

matters be conducted in a session or sessions open to the public.''

Regarding the nature of the investigation, the foreman of the grand jury stated to the members of that body, among certain irrelevant matters:

''This investigation is undertaken especially *to discover crime* or to refute more or less persistent and general reports *indicating suspicion of crime on the part of one or more individuals directly or indirectly interested in the passage or defeat of legislative proposals.*''

The foregoing procedure confers upon the grand jury of Sacramento County, with sufficient particularity of the offense charged, the authority to investigate lobbying or bribery of legislators or a conspiracy to commit those crimes within that county.

Section 85 of the Penal Code makes it a felony for any person to give or offer to a member of the state legislature a bribe, or to attempt by corrupt means to influence his vote upon measures pending before that body. Section 86 of the same code declares that it is a felony for any member of the legislature to solicit or accept a bribe to influence or control his vote upon legislative measures. Article IV, section 35, of the Constitution of California defines lobbying and makes it a felony, in the following language:

''Any person who seeks to influence the vote of a member of the legislature by bribery, promises of reward, intimidation, or any other dishonest means, shall be guilty of lobbying, which is hereby declared a felony.''

Section 182 of the Penal Code authorizes the prosecution and punishment as felonies of conspiracies to commit either bribery or lobbying. Section 184 of the same code confers jurisdiction upon the courts of any county within the state to try a cause wherein an overt act of conspiracy to commit a prohibited crime is performed.

During the investigation of the charges of lobbying and bribery, which lasted for many days, the petitioner was called by the grand jury as a witness and disclosed the fact that he was employed during the 1937 session of the legislature by many active interests, which furnished him with funds aggregating thousands of dollars, to represent them in the matter of pending legislation. The witness ad-

mitted that he had given elaborate dinners to members of the legislature and that he had expended large sums of money for their entertainment. For the purpose of showing that the petitioner failed to account for much of the funds which he received from his employers and the nature of his expenditures, the grand jury demanded of him all books, records, documents and memoranda showing all moneys received or expended for several years past on account of his employment by the several interests, and in connection with his association with members of the legislature, together with copies of his income tax statements for 1935, 1936 and 1937. No objection to these demands was made with the exception of the request for copies of his income tax reports, which the witness said he was told by his attorneys to inform them were privileged communications by the express terms of the state and federal statutes. July 8, 1938, a *subpoena duces tecum* was issued and served on the petitioner, demanding that he appear before the grand jury on July 19, 1938, and produce ''all office copies of all income tax returns, both State and Federal, for the calendar years 1935, 1936 and 1937, together with all work sheets relating thereto''.

This petition for a writ of prohibition was thereupon filed.

It is not contended the witness is excused from furnishing the evidence contained in the income tax reports, under the provisions of section 2065 of the Code of Civil Procedure on the ground that it would subject him to punishment for a felony, or that it would have a direct tendency to degrade his character. Indeed, that objection to the evidence under the circumstances of this case will not excuse the witness from testifying to the contents of those instruments. Article IV, section 35, of the Constitution of California provides in that regard:

''Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or with having been influenced in his vote or action, as a member of the legislature, by reward, or promise of future reward, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself, or subject him to public infamy; but such tes-

timony shall not afterward be used against him in any judicial proceeding, except for perjury in giving such testimony.''

The remaining question to be determined is whether the grand jury is authorized to force the petitioner to disclose the facts and figures contained in the copies of his income tax reports, the originals of which are filed with the federal and state governments for taxation purposes.

We are of the opinion these copies are not privileged under either the federal or state statutes and that the petitioner may therefore be required to produce them to be used by the grand jury as evidence in its investigation of crime. Those statutes do not include within their terms the copies in the hands of persons other than the officers. Since the original documents are inaccessible as evidence before the grand jury the copies become the best evidence procurable and are therefore competent. In the case of *State* v. *Nippert,* 74 Kan. 371 [86 Pac. 478], in which case the defendant was convicted of maintaining a public nuisance in violation of the prohibition act, a copy of his federal retail liquor license, the original of which was a privileged document in the possession of the federal officers under the United States Revenue Law, was admitted in evidence over objection. The same contention was made in that case with relation to the privileged documents in the custody of the government officers that the petitioner in this proceeding now makes. The Supreme Court of Kansas said:

''Since these officers cannot be compelled to produce the original records, nor furnish certified copies thereof, it follows that the originals are not the best evidence which can be produced in a state court. We think this copy admissible. Neither the original nor a certified copy thereof was obtainable. Recourse to secondary evidence was therefore necessary, and, under such circumstances, secondary becomes the best evidence. At common law, such evidence, under such circumstances, was always admissible.''

The copies or memoranda from which income tax reports are made, remaining in the hands of the maker thereof, are not privileged by the terms of either the state or federal statutes. The statutes merely forbid the use of the *original documents* in the possession of the public authorities except for taxation purposes as expressly provided. The statutes

are silent regarding copies of those documents in the hands of any persons other than the officers and their agents. The statutes specifically limit the application of the privilege to the officers having custody of the original documents. Section 33 of the Personal Income Tax Act of 1935 (Stats. 1935, p. 1090, at 1122), provides in that regard:

"Except in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful for the commissioner, any deputy, agent, clerk or other officer or employee, to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required under this act."

Likewise section 55 of the Federal Income Tax Act (26 U. S. C. A., p. 411, sec. 55 [g]), provides:

"It shall be unlawful for any collector, deputy collector, agent, clerk or other officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, . . . "

The federal act does further provide for inspection of the income tax reports in the possession of the government "upon order of the President and under the rules and regulations prescribed by the Secretary and approved by the President" to be used only for taxation purposes "by any official, body, or commission lawfully charged with the administration of any State tax law". The foregoing exception has no application to the circumstances of this proceeding.

The theory upon which public officers are precluded by law from disclosing information communicated to them in official confidence is to protect public interests which may be injured by producing documents or revealing facts in their possession. (27 Cal. Jur. 45, sec. 31.) In accordance with that principle, section 1881, subdivision 5, of the Code of Civil Procedure, enumerating the relationships of confidence regarding which a witness may not be examined, declares that:

"5. A public officer cannot be examined as to communications made to him in official confidence, *when the public interest would suffer by the disclosure.*"

The statutory privilege of confidential communications extends to neither the copies of income tax reports in the hands of individuals other than the officers 'with whom the originals are filed nor to the testimony of such a witness. Section 2064 of the Code of Civil Procedure provides:

"A witness, served with a subpoena, must attend at the time appointed, with any papers under his control lawfully required by the subpoena, and answer all pertinent and legal questions."

The original income tax reports in the possession of the officers are the only "public records" which are deemed to be confidential. Section 1888, subdivision 2, of the Code of Civil Procedure, provides:

"Public writings are:

. . . . . . . . . . . . . .

"2. Public records kept in this state, of private writings."
Section 1889 of the Code of Civil Procedure reads:
"All other writings are private."

■ Since the protection against privileged communications often leads to a suppression of the truth and to a defeat of justice, the tendency of the courts is toward a strict construction of such statutes. (*Dwelly* v. *McReynolds*, 6 Cal. (2d) 128, 131 [56 Pac. (2d) 1232]; 27 Cal. Jur. 44, sec. 30.) Unless the statute expressly extends the privilege to specific persons or classes, the law will not justify such individuals in refusing to disclose facts contained in documents which would otherwise be competent evidence in a particular proceeding. In the Dwelly case, *supra,* the court said:

" 'The burden is upon the party seeking to suppress the evidence to show that it is within the terms of the statute.' (*Sharon* v. *Sharon,* 79 Cal. 633, 677 [22 Pac. 26, 39, 131]; *Collette* v. *Sarrasin,* 184 Cal. 283 [193 Pac. 571].) The statements to be privileged and hence inadmissible *must come within the express terms of the section.* (*Edison Electric L. Co.* v. *United States Electric L. Co.,* 44 Fed. 294; *Peden* v. *Peden's Admr.,* 121 Va. 147 [92 S. E. 984, 2 A. L. R. 1414]; *Hawthorne* v. *Delano,* 183 Iowa, 444 [167 N. W. 196]; *Thaden* v. *Bagan,* 139 Minn. 46 [165 N. W. 864].)"

For the foregoing reasons we are satisfied the grand jury did not exceed its jurisdiction or authority in proceeding to investigate alleged lobbying and bribery of state legislators,

and that the petitioner's copies of his income tax reports are not privileged under either the federal or state statutes, but may be required to be produced as evidence by the grand jury in its investigation of crime.

The demurrer is sustained and the petition for a writ of prohibition is denied.

Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 12, 1938, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 12, 1938.