Application of Orlando CEPEDA, Petitioner, from an order directing Timothy COHANE, Respondent, to answer certain questions on oral deposition of said Timothy Cohane pursuant to order of the Court or in the alternative to punish him for criminal contempt in event of his refusal or failure to answer if so directed.

United States District Court
S. D. New York.

Aug. 14, 1964.

**466**

Lewis & Stein, San Francisco, Cal., Marvin Lewis, San Francisco, Cal., of counsel, for petitioner.

Whitman, Ransom & Coulson, New York City, Patrick Sullivan, New York City, of counsel, for respondent.

TENNEY, District Judge.

Plaintiff Cepeda, petitioner, moves herein for an order, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, directing deponent Timothy Cohane (hereinafter referred to as "Cohane") to answer certain questions previously put during the course of a deposition. Cohane, in refusing to answer the aforesaid questions, asserted an alleged privilege possessed by newspapermen and those similarly situated, protecting them from the need to reveal the sources of their information.

Briefly stated, this suit for libel was brought by Orlando Cepeda, a baseball player for the San Francisco Giants organization, against Cowles Magazines & Broadcasting, Inc., based on an article about Cepeda written by Cohane and published in the May 21, 1963 issue of defendant's bi-weekly magazine, LOOK.

The cause of action was originally commenced by plaintiff in the Superior Court of the State of California in San Francisco, and was thereafter removed, at the instance of the defendant on the grounds of diversity of citizenship, to the United States District Court for the Northern District of California.

It would appear, from the Court of Appeals decision in the instant case [Cepeda v. Cowles Magazines & Broadcasting, Inc., 328 F.2d 869 (9th Cir. 1964), cert. denied, 33 U.S.L. Week 3123 (Oct. 13, 1964), that the District Court granted defendant's motion for summary judgment on the ground that the article was not libelous *per se*, plaintiff having stipulated that he would not amend his complaint to allege special damages. On appeal, the decision was reversed, the Court of Appeals holding that the article was libelous *per se* and remanding the case to the District Court for a trial of the issues, to wit, whether the Giant officials, to whom Cohane ascribes certain statements, did, in fact, make such statements—this bearing on the issue of damages (328 F.2d at 871) and on the defense of truth.

Thereafter, on May 28, 1964, the Honorable Lloyd H. Burke, entered an order directing plaintiff to commence taking the deposition of Cohane on or about July 30, 1964, in New York City, pursuant to a stipulation entered into between the parties. The taking of the deposition was commenced on July 30, 1964, in the New York Offices of LOOK Magazine, 488 Madison Avenue. At the taking of the deposition certain questions were propounded to Cohane, which he refused to answer. The deposition was adjourned pending a ruling by the Court as to whether the information sought was privileged.

The questions propounded to Cohane, and which he refused to answer, related to the identity of the Giant officials to whom he ascribed the statements in his article. Thus, for example, at page 8 of the deposition, he was asked which Giant official had given him an indication that Cepeda would be traded—which question he refused to answer. At page 60 of the deposition, he was asked which official had told him that Cepeda had failed to make the "big hit"—which question he also refused to answer. The reason set forth by Cohane for his refusal to answer was that "this [information] was given to me under the tacit understanding that it was privileged information, that the source would never be revealed." (Page 8 of the Deposition) Cohane similarly refused to answer all questions put to him as to the source of any of the other statements included in the article.

There is no doubt that the questions propounded were germane and relevant to the issues and that the deposition was being taken in good faith by petitioner.

On July 30, 1964, the parties appeared before the Honorable John M. Cannella, a Judge of this Court, for a ruling as to the propriety of the questions propounded and whether the information sought was privileged. He adjourned the matter to the following week since Cohane at the time was not represented by counsel.

The matter came on before me on Wednesday, August 5, 1964, at which time Cohane was represented by counsel and the attorneys for both plaintiff and defendant were present. The parties similarly appeared before me on Thursday, August 6, 1964. At both conferences the parties involved, to wit, Cohane and petitioner, made their respective positions clear.

On August 7, 1964, Cohane was asked certain questions by me in open court. The questions were ones previously put by petitioner during the course of the deposition and to which Cohane had asserted his privilege.

At that time, I informed him that I was of the opinion that the matter was not privileged and directed him to answer the questions, which he, in a most respectful manner, refused to do. In the face of his refusal, in the presence of the Court, to answer questions put by the Court, and which he had been directed to answer, Cohane was adjudged to be in criminal contempt, pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, and ordered committed to the custody of the Attorney General or his duly authorized representative for a period of ten (10) days. The execution of said sentence was stayed pending a determination of the appeal subsequently taken on August 10, 1964, from the order and commitment. I might add parenthetically that at all times Cohane's manner has been most respectful and proper.

The threshold question presented is that of the proper law to be applied in the determination of the validity of the asserted privilege, to wit, federal law or state law—and if state law, is it pursuant to the procedure substance analysis of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) or is it by virtue of Rule 43(a) of the Federal Rules of Civil Procedure? See Massachusetts Mut. Life Ins. Co. v. Brei, 311 F.2d 463, 465–466 n. 3 (2d Cir. 1962); Compare 4 Moore Federal Practice ¶ 26.23[9] (2d ed. 1963) and 5 Moore Federal Practice ¶ 43.07 (2d ed. 1951) with 2B Barron & Holtzoff § 967 (1961).

The Court of Appeals for the Second Circuit, confronted by the problem, observed that "[t]here is considerable confusion in the decisions as to the application of the Erie case and the Federal Rules of Civil Procedure to state evidentiary privileges. However, the weight of authority appears to favor the view that the state rule is to govern * * *." Massachusetts Mut. Life Ins. Co. v. Brei, 311 F.2d 463, 465–466 (2d Cir. 1962); see Krizak v. W. C. Brooks & Sons, Inc., 320 F.2d 37, 43 (4th Cir. 1963). The Court, however, went further and stated that the rule of privilege and the recognition thereof reflected a legislatively determined state policy, and as such it was more than a rule of evidence or a question of procedure but should rather be classified as "substantive or quasi-substantive". 311 F.2d at 466. This rule applies with equal force to assertions of privilege at the deposition stage as well. Merlin v. Aetna Life Ins. Co., 180 F.Supp. 90 (S.D.N.Y.1960).

On the basis of the foregoing it is clear that if the instant case involved the usual situation of deposition and trial taking place in the same state this Court would be bound to look to the law of New York to determine the validity of the asserted privilege. Massachusetts Mutual Life Ins. Co. v. Brei, supra; Merlin v. Aetna Life Ins. Co., supra; cf., Garland v. Torre, 259 F.2d 545, 550 (2d Cir.), cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). (In Garland, the Court found it unnecessary to determine whether New York law should be

applied but nonetheless, in reaching its decision, looked to both New York law which did not recognize a privilege and other "federal and state [precedents] refusing to recognize such a privilege in the absence of a statute creating one.") Moreover, it seems clear that if New York law would apply, the identity of the source of information is not privileged information. People ex rel. Mooney v. Sheriff, 269 N.Y. 291, 199 N.E. 415, 102 A.L.R. 769 (1936).

However, the case at bar presents a somewhat novel situation for the place of trial and the place of deposition are located in different states. More important, the place of trial, namely, California, recognizes a privilege in this area, whereas New York, the place of deposition, does not. Thus the second question posed is whether the law of the deposition state, wherein there is no privilege, or the law of the trial state, wherein there is a privilege, is to be applied.

Two federal cases involving analogous situations resolved the problem in favor of the deposition state, albeit on different grounds.

Ex parte Sparrow, 14 F.R.D. 351 (N.D. Ala. 1953) involved a deposition being taken in Alabama, at the instance of the plaintiff, in a libel action then pending in the United States District Court for the Southern District of New York. The information sought concerned the identity of the source of certain information forming the substance of the libel. The District Court applied the law of Alabama which held the matter to be privileged. Ala.Code tit. 7, § 370 (1958). In upholding the claim of privilege, the Court set forth the following grounds:

"While this court does not consider the question of privilege to be a matter of substance and therefore controlled by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, it would appear that this court should refer to the statutory law of Alabama in the absence of any Federal rule on privilege.

\* \* \* \* \* \*

"[I]t [this Court] would not be justified in ignoring such a clear and unequivocal pronouncement of the public policy of the state in which it sits, merely to reach out and apply a rule against the asserted privilege established in a non-federal jurisdiction." 14 F.R.D. at 353.

It would seem then that the thrust of the Court's opinion is based upon the clearly enunciated public policy of Alabama, as set forth in its statute, upholding the privilege.

In Palmer v. Fisher, 228 F.2d 603 (7th Cir. 1955), cert. denied, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956), a comparable situation was presented, to wit, a cause of action pending in a state not recognizing an accountant's privilege, the deposition of a witness being taken in a state recognizing the privilege.

In upholding the privilege, the Court initially observed that state laws creating privilege are substantive and therefore should be followed in diversity cases. It then went on to pose and solve the basic problem presented:

"The next question is the applicability of an Illinois statutory privilege to a deposition taken in Illinois for use in Florida. We are unable to find direct authority on the point, but conclude that an Illinois court (or a federal court sitting in Illinois) could properly enforce this Illinois statutory privilege no matter where the deposition is to be used. The State Legislature had declared it to be public policy in Illinois that public accountants shall not be required to testify about information obtained in their confidential capacity as accountants. This policy would be defeated if any court, state or federal, sitting in Illinois should require an accountant to testify as to such information. This would be true whether the testimony was to be used in a court sitting in Illinois or in any other state." 228 F.2d at 608.

Thus the sum total of both cases would seem to be that where a deposition is being taken in a state whose declared public policy has carved out a privilege in favor of a certain class of communication, a federal court sitting in that state will apply that pronounced public policy to questions propounded on a deposition of an out-of-state suit, even though the trial state does not recognize the privilege.

It is also interesting to note that in Ex parte Sparrow, in further justification for applying Alabama law, the following contacts existed between the New York cause of action and Alabama, the state of deposition:

> "The gravamen of plaintiff's action pending in the Southern District of New York was publication by defendant under the trade name of 'Front Page Detective,' in New York of an article entitled: 'Devil's Island, U.S.A.' It appears from the transcript of Sparrow's testimony that he furnished to W. W. Ward, author of the alleged libelous article, information upon which such article was based. The general theme of such article related to conditions existing in state prisons during plaintiff's tenure of office as Governor of the State of Alabama.

> "For the past twenty-four years the witness Sparrow has been an employee of the publishers of the Birmingham News, a newspaper published in Birmingham, Alabama. Since 1944 the witness has written a number of articles, published in the Birmingham News, relating to the administration of the Alabama prison system and the Pardon and Parole Board. In the process of collecting data which formed the factual basis for his articles, the witness received numerous reports given to him in confidence by employees of the State Departments involved in his investigation." 14 F.R.D. at 352.

The New York cases that have been faced with the same problem have all held that the New York law recognizing a privilege and defining its scope would apply to a deposition taken in New York on an out-of-state suit, even though the law of the place of trial either may not recognize the privilege or may interpret it in a narrower fashion. In upholding the claimed privilege, the courts have uniformly based their decision on the public policy of New York, as enunciated by statute, carving out an exception to the general rule which requires a person to testify to all matters of which he has knowledge. Thus, in Matter of Franklin Washington Trust Co., 1 Misc.2d 697, 148 N.Y.S.2d 731 (S.Ct.1956), the Court enunciated this principle as follows:

> "Petitioner claims that the law of the place where the testimony is to be heard governs its admissability and this cannot be disputed. * * * But here we are concerned with something more than the mere admissability of testimony. Respondents are attorneys in this state and the inquiry concerns professional acts done here. They should not be allowed to reveal, much less compelled to, any matter which the public policy of the state deems inviolate. The evil which is sought to be avoided is the revelation of the confidential matter per se, not the exclusion of testimony which might be in some way harmful. The restriction of the statute is only an echo of the mandate of the canon of ethics in that regard and only applies to testimony what is the rule in regard to all communications in or out of court." Id. at 698, 148 N.Y.S.2d at 733.

To the same effect, see Matter of Walsh, 40 Misc.2d 413, 243 N.Y.S.2d 325 (S. Ct.1963); Application of Queen, 233 N. Y.S.2d 798 (S.Ct.1962).

In resolving the problem of which law to apply, the Court is guided by certain choice of law principles. It is clear that in a diversity case the Court sits as another state court and must apply the conflict of law rule of

the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In looking to New York law, I find that as a general principle the law of the place where the testimony is to be heard governs its admissibility. Matter of Roberts, 214 App.Div. 271, 212 N.Y.Supp. 183 (1st Dep't 1925). The only cases in New York presenting the specific questions of the validity and scope of a privilege asserted at the deposition state arose in the context of recognition in the deposition state and either non-recognition or different scope in the trial state. See Matter of Franklin Washington Trust Co., supra; Matter of Walsh, supra; Application of Queen, supra. Those cases, in disregarding the general rule enunciated in Matter of Roberts, supra, applied the law of the deposition state, recognizing the privilege and defining its scope. In doing so they abided by the well-established doctrine that a state may refuse to apply the law of a sister state when the forum (deposition state) has contacts with the cause of action and has a fundamental public policy not in accord with the law of the sister state (trial state). See Pearson v. Northeast Airlines, Inc., 309 F.2d 553 (2d Cir. 1962), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963); cf., Richards v. United States, 369 U.S. 1, 12–16, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

However, in analyzing the above cited New York cases I find a strong indication that if the situation were reversed, to wit, a strong public policy in the trial state recognizing the privilege and non-recognition in New York, the deposition state, the New York court would, on such an out-of-state cause of action, apply the law of the place of trial and uphold the asserted privilege if it was valid under the law of the sister state. Matter of Franklin Washington Trust Co., 1 Misc.2d at 698, 148 N.Y.S.2d at 733; Matter of Walsh, 40 Misc.2d at 413–414, 243 N.Y.S.2d at 326; Application of Queen, 233 N.Y.S.2d at 799–800; cf., Palmer v. Fisher, 228 F.2d 603, 608

(7th Cir. 1955), cert. denied, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956). Therefore as a corollary of the general rule that the place of trial governs the admissibility of evidence, I submit that the law of the place of trial should also, save in the situation where the deposition state recognizes a privilege, govern the validity and scope of the privilege asserted and, further, that a New York court would in such a circumstance defer to the public policy of the trial state recognizing the privilege.

The "principle of privilege * * * [is] an exception to the general liability of every person to give testimony upon all facts inquired of in a court of justice." 8 Wigmore § 2285 at 527 (McNaughton Rev.1961). Thus, it is a state's affirmative action in carving out a privilege creating an exception to a general rule of testimonial compulsion, which constitutes the enunciation of a strong public policy in favor of the protection of certain communications, whereas the refusal to recognize a privilege is merely the application of the general rule of compulsion to testify to all facts affecting a specific controversy.

When viewed in this light the cases cited supra, applying the public policy of the deposition state recognizing a privilege, are distinguishable from the situation at bar and, in fact, support the conclusion that in the instant case, the law of the place of trial, which recognizes the privilege, should apply. Thus, as set forth in the New York cases cited supra, the general rule that the law of the place of trial governs must give way to a public policy of the place of deposition, when the place of deposition has enunciated a strong public policy in favor of creating a privilege. Or, as the court so aptly put it in Application of Queen, 233 N.Y.S.2d 798, 800 (S.Ct. 1962):

" 'However much we may desire to assist a sister State, our courts may not go beyond the statutory powers granted by our Legislature.' "

In the case at bar, however, this Court is not being asked to disregard a fundamental policy of New York, i. e., the state of deposition, and apply the law of the place of trial, as would be the case if New York recognized the privilege and California did not. Rather, it is being asked to recognize the strong public policy of the place of trial, which has the most contacts with the cause of action, in the absence of contrary public policy in New York. And as set forth before, the only time when such a conflict would exist is when the deposition state recognized the privilege and the state of trial did not.

Thus, in the case at bar, I am of the opinion, based on the rationale of the cases cited supra, that it is the public policy of California, the place of trial, which should control, and, accordingly, its statute should apply in the determination of whether or not the information sought of Cohane is privileged. See Comment, 23 U.Chi.L.Rev. 704 (1956); 2A Barron & Holtzoff § 651 at 95 (1961).

I am strengthened in this conclusion by two factors. First, the State of California is the state with the strongest interest in, and the most contacts with, the pending cause of action. It is the residence of the plaintiff and the place where the cause of action is pending. New York, aside from being the place of deposition and perhaps the residence of the witness, does not have the same interest in, or contacts with, the controversy, and as such its law should not apply. Cf., Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 559 (2d Cir. 1962), cert. denied, 372 U.S. 912, 83 S. Ct. 726, 9 L.Ed.2d 720 (1963). To apply the law of New York merely because of the fortuitous circumstance that it happens to be the place of the taking of the deposition, would merely encourage forum-shopping in the sense of attempting to take a deposition in a state which does not recognize the privilege. Secondly, since, in the case at bar, the deposition state has *not* carved out an exception by way of privilege to the general rule concerning duty to testify, there would appear to be no public policy considerations that would warrant a departure from the general rule enunciated in both state and federal cases that the law of evidence governing the actual trial as to privileged matters also governs at the deposition stage. Transmirra Prod. Corp. v. Monsanto Chemical Co., 26 F.R.D. 572 (S.D.N.Y.1960); Wild v. Payson, 7 F.R.D. 495 (S.D.N.Y.1946); cf., Matter of Franklin Washington Trust Co., 1 Misc.2d 697, 148 N.Y.S.2d 731 (S.Ct.1956); 4 Moore Federal Practice ¶ 26.22 [0.1] (2d ed. 1963). The rationale for the rule was succinctly stated in Transmirra, supra: "The gates may not be opened now and then closed at the trial, for any harm would have already been done." 26 F.R.D. at 576.

As a result of the foregoing, the issue remaining for decision is whether the California statute protects deponent Cohane. See generally, Carter, The Journalist, His Informant and Testimonial Privilege, 35 N.Y.U.L.Rev. 1111 (1960).

Section 1881 of the California Code of Civil Procedure (Cal.Civ.Proc.Code § 1881, subd. 6 (Supp.1963)) provides as follows:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases: * * *

"6. A publisher, editor, reporter, or other person connected with or employed upon a newspaper, or by a press association or wire service, cannot be adjudged in contempt in a court * * * for refusing to disclose the source of any information procured for publication and published in a newspaper.

"Nor can a radio or television news reporter or other person connected with or employed by a radio or television station be so adjudged in contempt for refusing to disclose the source of any information procured for and used for news or

news commentary purposes on radio or television."

[The latter paragraph relating to radio and television was added in 1961.]

Plaintiff Cepeda, petitioner herein, submits that the statute must be strictly construed and, as so viewed, it includes by its terms only "persons connected with or employed upon a *newspaper* or by a *press association* or *wire service*", or "a *radio* or *television news* reporter", and as such Cohane, a journalist working on a bi-weekly periodical, is not covered by the statute. (Emphasis added)

■ Bearing in mind that a privilege recognized by law constitutes an exception to the general liability of all persons to testify to all matters (see Morgan, Foreword to the Model Code of Evidence 7 (1942)), in analyzing the aforementioned statute the Court must be guided by the rule of strict statutory construction.

This position of strict statutory construction of the within privilege statute (Cal.Civ.Proc. Code § 1881 (Supp.1963)) was stated in Tatkin v. Superior Court, 160 Cal.App.2d 745, 753, 326 P.2d 201, 205–206 (2d Dist.1958):

"The statutory privileges set forth in section 1881, Code of Civil Procedure, provide against the examining of a witness as to confidential communications between husband and wife, attorney and client, confessor and confessant, physician and patient, public officers and certain newspaper personnel. As said in Samish v. Superior Court, 28 Cal. App.2d 685, 695, 83 P.2d 305, 310: 'Since the protection against privileged communications often leads to a suppression of the truth and to a defeat of justice, the tendency of the courts is toward a strict construction of such statutes. Dwelly v. McReynolds, 6 Cal.2d 128, 131, 56 P.2d 1232; * * *. Unless the statute expressly extends the privilege to specific persons or classes, the law will not justify such individuals in refusing to disclose facts contained in documents which would otherwise be competent evidence in a particular proceeding. In the Dwelly case, supra, the court said * * *:

" ' " " 'The burden is upon the party seeking to suppress the evidence to show that it is within the terms of the statute.' (Citations.) The statements to be privileged and hence inadmissible *must come within the express terms of the section.* (Citations.)" ' "

No California cases have been cited, or found, defining the scope of the confidential source privilege as it relates to a magazine writer. However, petitioner cites another statute in California, using the same phrase as the within statute, that has been held not to cover magazines. Section 48a of the Civil Code of California (Cal.Civ.Code § 48a (1954)) provides:

"In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided."

In Morris v. National Federation of the Blind, 192 Cal.App.2d 162, 13 Cal. Rptr. 336 (1st Dist.1961), the Court held that the above-mentioned section [hereinafter referred to as "retraction statute"] applies only to a publication in a newspaper or by radio broadcast but not to a publication in a magazine.

While this case lends some weight to the definition of the term "newspaper", it is not dispositive of the issues presented herein. The rationale of the retraction statute is a simple one:

"[N]ewspaper and radio stations have a primary function of disseminating news and the high speed at which they are expected to operate precludes as a practical matter a minute verification of material." Note, 64 Harv.L.Rev. 678, 679 (1951).

Accordingly, since magazines publishing on a weekly or monthly basis do not have the same sense of immediacy to provide the news "while it is new", and they can check for errors, the benefit of the retraction statute is properly not accorded to them. Thus the authority of Morris, supra, does not completely dispose of the issue presented, but does lend some weight to the statutory construction advanced by petitioner.

Ohio has also enacted a statute comparable to California's protecting the newspaperman's source of information. Ohio Rev.Code Ann. § 2739.12 (Page 1953) protects persons "engaged in the work of, or connected with, or employed by any newspaper or any press association." In construing the statute, the Federal District Court for the Northern District of Ohio refused to extend the coverage of the statute to a bi-monthly report. Deltec, Inc. v. Dun & Bradstreet, Inc., 187 F.Supp. 788 (N.D. Ohio 1960). In deciding the conflicting contentions of the parties, the Court relied on the statutory language itself since neither counsel nor the court could find any authority indicating whether a broad interpretation of the statute was warranted.

> "The legislature has specifically and clearly protected newspaper reporters from disclosing their sources of information. By the same token, it is difficult for us to see how the legislature meant to include such a publication as defendant's within the same protection, for it would have been a simple thing to do so if it desired. 'Periodical' is specifically included in the sections before and after Section 2739.12, but is conspicuously absent in Section 2739.12. We cannot, under these circumstances, stretch the meaning of 'newspaper or any press association' to include defendant, and the very fact that the legislature chose these nouns indicates to us that it realiz-

ed the ultimate and necessary effect of its language." Id. at 789–790.

While this case lends some assistance in defining the term "newspaper", it, too, is not dispositive of the issue presented since the Court placed great importance on the fact that in other sections of the statute the Legislature of Ohio had specifically included the term "periodical", a situation not present in the case at bar.

It is significant that of the eleven (11) other states that have enacted legislation similar to that in California (see Note, 35 Neb.L.Rev. 562 (1956); 8 Wigmore § 2286 at 532–33 (McNaughton Rev.1961)), three have seen fit to specifically include either "journals", Md.Ann. Code, art. 35, § 2 (1957), "periodicals" Ark.Stat.Ann. § 43–917 (Supp. 1963) or "other publications" Mich.Stat. Ann. § 28.945(1) (1954), Comp.Laws 1948, § 767.5a, P.A.1951, No. 276.

In addition, it is also significant that when the California statute was amended in 1961 to include other classes of news media only the following classifications were added: "press association or wire service" and "radio or television news reporter". Cal.Civ.Proc.Code § 1881, subd. 6 (Supp.1963).

While it is true that no California cases have held that magazines are not covered by the statute, by force of the statutory language itself, the rules of construction governing its application, and the lack of authority supporting deponent's position, I am of the opinion that Cohane does not fall within its ambit and protection. I reach this decision based on the abovementioned analogous and supplemental authority and upon the fact that the recognition of a privilege is in derogation of the common law, in effect suppresses otherwise relevant and important evidence, and, accordingly, in the absence of specific statutory language creating it, should not be extended to cover other situations not specifically included in the actual terminology of the statute. See Tatkin v. Superior Court, supra.

At the hearing before me, when the questions were propounded to him, Cohane stated for the record that:

"I still prefer not to answer that question neither now or at any future time until all possible means of eliciting that information from other sources have been exhausted."

This position was a different one from the one that Cohane maintained both at the deposition and at the prior conferences, since here for the first time he intimated that he might reveal the source of his information under certain circumstances.

In setting forth this condition, Cohane refers to Garland v. Torre, 259 F.2d 545 (2d Cir.), cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). In that case the District Court was faced with cross motions by the plaintiff and the witness, the plaintiff moving under Rule 37(a) of the Federal Rules of Civil Procedure for an order directing the witness to answer certain questions and the witness moving under Rule 30(b) of the Federal Rules of Civil Procedure for a protective order.

In denying the Rule 30(b) motion of the witness, Chief Judge [then District Judge] Ryan made the requisite findings, that the deposition was being taken in good faith and was a necessary step in the proper preparation for trial. See 4 Moore Federal Practice ¶ 30.09 (2d ed. 1963). He further observed that a witness may not "direct or control the manner in which or time when discovery is to be had nor may the convenience or personal wish of a witness be permitted to interfere with the orderly judicial process save when it has support in law and a grave injustice or harm may otherwise come to the witness." (Garland v. Torre, supra, Joint Appendix on Appeal, at 105.)

In affirming the denial of the motion for a protective order, under Rule 30(b), the Court of Appeals made the following observation:

"These findings were entirely justified. While it is possible that the plaintiff could have learned the identity of the informant by further discovery proceedings directed to CBS, her reasonable efforts in that direction had met with singular lack of success." 259 F.2d at 551.

Cohane refers to that language in support of his present position, and in effect says that other means should be utilized to obtain this information before he is compelled at a later date to name his source, if he is so inclined at that time.

Initially I must observe that no Rule 30(b) motion is before the Court and as such the above cited statement is not binding in the instant situation. However, I also believe that the circumstances alluded to by the Court of Appeals in its decision are present in the case at bar.

The full text of the "LOOK" article including the portions alleged to be libelous is set out in Cepeda v. Cowles Magazines & Broadcasting, Inc., 328 F. 2d at 873–877. It would appear from the deposition that with respect to all those allegedly libelous portions, only as to two statements in the article does Cohane assert that he quoted a Giant official to whom he now ascribes the statement. At other places and as to other statements, he asserts that the Giant official involved had either made the statement in parallel verbiage, had made statements to that effect, or had conveyed a similar thought. In those instances, Cohane could not remember the exact language used. As far as other statements were concerned, Cohane asserted that the statements made to him were "tantamount" to the conclusion set forth in the article, or that he received certain "indications" from Giant officials, or "intimations" based on their statements that a certain situation described in the article existed. (Compare the testimony of the witness Maria Torre, Garland v. Torre, supra. Joint Appendix on Appeal at 31, 34).

In sum total, then, the article and the statements included therein were based, in part, on inferences which Co-

hane drew from statements of Giant officials, or on the implications and "indications" of such statements upon which he concluded that a certain state of facts existed. (See, e. g., Deposition, at 8, 46, 53, 55, 69).

The present suit is pending in San Francisco. Petitioner's attorney came here pursuant to Court order to take the deposition of Cohane. The information sought constitutes the only remaining issue in the case. On the basis of the information now supplied to him, to wit, that much of the story and statements are based on inferences, indications, intimations and a set of facts tantamount to the situation described in the article, it would be impossible for him to secure the information elsewhere. This is so even though Cohane has narrowed the possible source of his information to eight Giant officials, "two or possibly three" of whom either stated, inferred or intimated the statements in the article. Petitioner's attorney has taken the deposition of four of those officials with negative results. Since the statements ascribed to them are not quotes but either paraphrases, summations or inferences drawn from statements, the other Giant officials questioned could very easily and in all honesty state that they never gave such an indication, intimation or made a statement upon which Cohane inferred what he states in the article. Cohane testified that he discussed baseball with all eight and discussed Cepeda with some, maybe all of them, but that he received the specific information or a hint of it or that he culled the contents of the article by implication, from the statements of two or three of the men involved. The obvious problem presented to petitioner's attorney is that an inference is based in whole upon the subjective state of mind of the listener—thus two people can draw different inferences from the same statement. Accordingly, to ask eight people whether they either made a certain statement *in haec verba*, said something to that effect, intimated it, inferred it, or gave that "indication", would not only place an unwarranted burden on petitioner's attorney but would not secure the requisite information. To place such a burden on petitioner's attorney, to compel him to travel back and forth from coast to coast to secure information that can only be secured from this witness, is unwarranted.

Moreover, petitioner argues, and rightly so, that either there is a privilege existent or there is no privilege, and if there is none there is no reason in law for the refusal to answer (cf., Joint Appendix on Appeal, Garland v. Torre, supra, at 101). Both under New York law, if applied, and under California law, which I believe should apply, there is, I have held herein, no privilege; and, consequently, the information should be divulged. That being the case, there is no reason to delay divulgence in the remote hope of securing the information elsewhere.

Accordingly, pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, a Certificate and Order and Commitment were duly issued on August 7, 1964.