**R. & J. DICK CO., Inc., and Canadian Pollard Bearings, Ltd.**

v.

**Walter C. BASS and Belting, Incorporated.**

**Civ. A. No. 11471.**

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 31, 1968.

King & Spalding, Charles H. Kirbo and R. Byron Attridge, Atlanta, Ga., Rogers, Hoge & Hills, New York City, for plaintiffs.

Gambrell, Russell, Moye & Killorin, Atlanta, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

By loose analogy, this case might be described as involving a "business divorce". It began when two members of a tri-party business arrangement each severed their pre-existing bonds of agency with the third (now complainant here) and assumed new vows to each other. As in a conventional divorce contest, the case involves claims of misconduct, bitterness, resentment, memories and wounded feelings.

At the outset it may be well to identify the members of the triangle: Before the estrangement, the plaintiff (R. & J. Dick Company) was (and still is) a national distributor of industrial belting and other products. During and prior to 1967 it held a contract as exclusive distributor for the belting products of a Swiss manufacturer (Fernand Habegger) throughout the territorial United States. Habegger is not named as a defendant but is alleged to be involved by having acted through an alleged alter ego and wholly-owned subsidiary, defendant Belting Incorporated. Defendant Bass was, prior to August, 1967, a director, sales representative and general manager of plaintiff Dick.

During August, 1967, defendant Bass severed his relations with Dick. There is disagreement as to the circumstances surrounding this termination. Bass says his contract of employment expired by its terms; plaintiff contends that its termination was contrived as part of a conspiracy between Bass and Habegger. Effective December 31, 1967, Habegger, in turn, terminated the franchise held by plaintiff Dick. Again, defendants contend the franchise had expired and simply was not renewed; plaintiffs again contend that the termination was contrived by reason of the same con-

spiracy. In the meantime, Habegger had caused the defendant Belting Inc. to be incorporated as its wholly-owned subsidiary. Belting Inc. now distributes the products of Habegger. To complete the circle, Belting Inc. has now hired defendant Bass, the former director and general manager of plaintiff Dick, as its manager.

Simply stated, the contention of plaintiff Dick is that Bass, before the termination of his employment and while still acting as its officer, director and fiduciary, entered into a conspiracy or tacit arrangement with Habegger whereby he, Bass, would leave the employment of Dick, and that thereupon, and upon the termination of Dick's franchise, Habegger would enter into a new franchise agreement with a new corporation to be formed (owned by Habegger or Bass or both), Bass being employed by the new corporation. Dick further contends that in furtherance of this arrangement and while he was still employed by Dick, Bass assembled, and after leaving Dick, retained certain property, customers lists and confidential literature of Dick, and that thereafter, Bass used this confidential information to solicit Dick's customers for the new corporation and to induce other Dick employees to leave its employ and join the new company. Plaintiffs contend that these actions by the defendant Bass, concurred in or instigated by Habegger and Belting Inc., constitute a breach of a fiduciary obligation on the part of Bass. Plaintiff seeks an injunction and damages.

At this time the case is before the court on two fairly narrow issues, both involving discovery: First, the plaintiff, Dick, seeks to take the deposition of the estranged (though not divorced) wife of defendant Bass, presumably for the purpose of establishing the alleged conspiratorial negotiations between Bass and Habegger. Mrs. Bass, however, is a resident of the State of Pennsylvania, and a statute of that state (28 Purdon, Penn.Stat.Annot., § 317) appears on its face to absolutely prohibit husband and wife testifying against each other in civil cases.[1] Curiously, and apparently as an added precaution, another Pennsylvania statute (§ 316) also prohibits either spouse from testifying to confidential communications between them unless the privilege be waived.

Georgia law, on the other hand, contains no such absolute prohibition as the Pennsylvania statute first referred to, but does exclude confidential communications between husband and wife.[2]

Notice to take the deposition of Mrs. Bass in Pennsylvania was duly served by plaintiffs, and defendants have now moved in this court that the notice be vacated. The court thus finds itself confronted with an interesting question in that chameleon-like and kaleidoscopic field, conflict of laws. Initially, since Georgia has no objection to the deposition, and since it is to be taken in Pennsylvania, the court was tempted to defer to the Pennsylvania courts and let them decide whether the taking of the deposition was permissible under their law. The question is raised here, however, and the court has reluctantly concluded it should decide it.

■ In seeking a solution, then, we begin with certain principles which cannot be disputed: First, that ordinarily, the admissibility of evidence, including competency of witnesses, is governed by the law of the forum state. 15A C.J.S. Conflict of Laws § 22(10), p. 542; 97 C.J.S. Witnesses § 253, p. 741; Bowers v. Southern Railway, 10 Ga.App. 367(7), 73 S.E. 677 (1912).

■ Second, that matters of privilege and competency are ordinarily considered as being substantive within the meaning of Erie Ry. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), so that, at least where a state statute is in-

1. The language of the statute is: "Nor shall husband and wife be competent or permitted to testify against each other * * *." The statute does contain certain exceptions, as in divorce proceedings, etc., but none of them are applicable here.

2. Ga.Code Ann. § 38–418(1).

volved, a federal court will, in a diversity case, follow the law of the state where it sits. Mass. Mutual Life Ins. Co. v. Brei, 311 F.2d 463, 100 A.L.R.2d 634 (2nd Cir., 1962); Application of Cepeda, 233 F.Supp. 465, 467 (S.D.N.Y., 1964).

■ Third, and finally, these rules apply at the deposition stage of the proceedings as well as at final trial. Merlin v. Aetna Ins. Co., 180 F.Supp. 90 (S.D. N.Y., 1960); Application of Cepeda, supra.

■■ All this would seem to indicate that Georgia law controls; and so it must[3]—but the situation here may very well be one where Georgia courts themselves would apply the law of Pennsylvania. For example, the Pennsylvania competency statute previously mentioned does not merely establish a rule of evidence; rather it announces a deeply ingrained public policy of that State; and while ordinarily a deposition state would defer to the forum state on a question of evidence, it is not required to do so (and probably would not) where its public policy would be offended thereby. See Palmer v. Fisher, 228 F.2d 603 (7th Cir., 1955), cert. denied 351 U.S. 965, 76 S. Ct. 1030, 100 L.Ed. 1485; Ex Parte Sparrow, 14 F.R.D. 351 (N.D.Ala., 1953). Georgia recognizes this rule, and if the situation were reversed (that is, if a Pennsylvania court was seeking a deposition in Georgia which offended the public policy of Georgia), it is very doubtful whether Georgia would permit the deposition to be taken. Ga.Code Ann. § 102–110; Ulman, Magill & Jordan Woolen Co., Inc. v. Magill, 155 Ga. 555, 117 S.E. 657 (1923).

The question then is one of comity. Shall this court, bound as it is by the Georgia rule as to conflict of laws, nevertheless honor the public policy of Pennsylvania; and if so, may the deposition be taken under Pennsylvania law? Although the question seems to be one of first impression in Georgia, the court concludes that on the very narrow question of whether the deposition shall be taken, Pennsylvania law should control, and that, if called upon to decide the question, the Georgia court would so hold. The court reaches this conclusion for several reasons: First, the court arrives at this result as a matter of practical necessity, for here the witness resides in Pennsylvania, and if a Pennsylvania court would prohibit her deposition, certainly neither the Georgia courts nor this court could compel it to be taken. Second, the Pennsylvania privilege, embodying as it does the public policy of that state, relates to a matter of substance, not of form, and on such a matter Pennsylvania law would be given controlling effect in Georgia. The "transaction" here in contemplation is, of course, the taking of a deposition, and on this subject Georgia law provides that:

> "Matters of substance or right, and those of procedure or remedy are to be distinguished. The former are controlled by the law of the *place of the transaction* while the latter are controlled by that of the forum." 5 Encyclopedia of Georgia Law, "Conflict of Laws", § 21. (Emphasis supplied.)

Again, bearing in mind that the "transaction" in question is the taking of a deposition, Pennsylvania *becomes* the forum state, and its law would apply whether the question be regarded as substantive or procedural.

Finally, the conclusion that Pennsylvania law should control seems to represent the better reasoning in those cases from other states which have considered the general question:

> " * * * (W)here a deposition is being taken in a state whose declared public policy has carved out a privilege in favor of a certain class of communication, a federal court sitting in that state will apply that pronounced pub-

---

3. "In diversity of citizenship cases, the federal courts, when deciding questions of conflict of laws, must follow the rules prevailing in the States in which they sit." Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

lic policy to questions propounded on a deposition of an out-of-state suit, even though the trial state does not recognize the privilege." Application of Cepeda, supra, 233 F.Supp. at 469.

See also Ex Parte Sparrow, supra; Palmer v. Fisher, supra; Matter of Franklin Washington Trust Co., 1 Misc. 2d 697, 148 N.Y.S.2d 731 (1956); In re Whitlock, 51 Hun 351, 3 N.Y.S. 855 (1889). As Corpus Juris says:

"* * * (W)here a witness is examined in one state under a commission issued out of a foreign state or country, the law of the state where the examination is held governs." 97 C.J.S. Witnesses § 253, p. 741.

We conclude, therefore, that Pennsylvania law should apply, which would seem to indicate, at first blush, that the notice to take the deposition should be quashed. There is serious question, however, whether the courts of Pennsylvania, applying Pennsylvania law, would prohibit the taking of this deposition. In discussing their statutes, for example, the Pennsylvania courts have said:

"The objection to answering questions relating to his wife is based on the theory that such questions would violate the Act of May 23, 1887, P.L. 158 § (c), 28 P.S. § 317 which provides that one spouse is not competent to testify against the other. We have held that this Act is subject to limitations and the modern view is that these limitations may be expanded. 'This privilege has no longer adequate reason for retention. In an age which has so far rationalized, depolarized and dechivalrized the marital relation and the spirit of femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism in legal theory and an indefensible obstruction to truth in practice * * *'. Wigmore on Evidence, Vol. VIII, § 2228, page 221." Kine v. Forman, 205 Pa. Super. 305, 209 A.2d 1 (1965).

Nor has this criticism been ignored in practice, at least where fraud is involved.

Thus, in the leading case on the subject, Kerr v. Clements, 148 Pa.Super. 378, 25 A.2d 737, 740 (1965), the court said:

"The prohibition against the competency of husband and wife to testify against each other operates only within proper bounds. It was not intended in the act to supply the means of protecting another in a fraudulent transaction nor to render husband and wife secure in the enjoyment of the fruits of fraud."

Again, in Kine v. Forman, supra, the court said:

"The public policy which protects as confidential the private communications or acts by the husband and wife does not necessarily extend to those communications or acts which are in furtherance of a fraud, where the proceedings are based upon a civil action."

This last statement was again quoted by a federal court sitting in Pennsylvania in Federal Deposit Insurance Corp. v. Alter, D.C., 106 F.Supp. 316, 318. See also Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933).

Responding to the exception where fraud is involved, the defendants contend, however, that the present complaint does not allege fraud. In examining this contention, the court is constrained to concede that the complaint may not allege fraud in the classic sense of that term; but it does allege facts which, if true, might very well establish "a fraud". As the District Court said in Federal Deposit Insurance Corp. v. Alter, supra:

"It is my firm belief that the allegations of the complaint together with the inferences to be drawn from them constitute the essential requisites of fraud. Fraud, in its general sense, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence and resulting in damage to another. Connolly v. Gishwiller, 7 Cir., 162 F.2d 428; Moore v. Crawford, 130 U.S. 122, 9 S.Ct. 447, 32 L.Ed. 878."

Here, the complaint alleges, in substance, that one of the defendants, Bass, while acting for the plaintiff in a fidu-

ciary capacity, conspired with the other defendant (through its parent company) to cause a termination of plaintiff's distributorship, and that, in further violation of his fiduciary obligations, the same defendant purloined, kept and used property and confidential papers of the plaintiff, from all of which plaintiff claims to have suffered damage. These allegations may or may not be true. When the facts are developed, they may or may not show fraud, but in the meantime, they certainly sufficiently allege "a fraud" to justify a discovery deposition.

There are other facets of Pennsylvania law which militate against preventing the deposition: At this time no one knows whether the wife's testimony will in reality be directed "against" her husband. If not, the deposition can clearly proceed under Pennsylvania law. Kerr v. Clements, supra.

Moreover, and in any event, there are many matters as to which the wife may be examined without being called upon to testify "against" her husband. It is obvious that she is acquainted with the Swiss manufacturer, Habegger. She may very well have had conversations with him which would exonerate her husband and implicate Habegger or his subsidiary, Belting Incorporated.

■■ For all of these reasons, the court rules that the deposition may proceed (unless stopped by the courts of Pennsylvania); but not without certain limitations. Both Georgia and Pennsylvania have statutes excluding confidential communications between husband and wife. This means, in Georgia, that not all conversations between husband and wife may be excluded but only those of a confidential character. Lowry v. Lowry, 170 Ga. 349, 353, 153 S.E. 11, 70 A.L.R. 488 (1930). This would seem to include any information received by the wife as a result of the marital relation. McIntyre v. Meldrim, 40 Ga. 490 (2) (1869); Stewart v. Wilson, 92 Ga. App. 514, 517, 88 S.E.2d 752 (1955). Under Georgia law, the wife could tes-

tify as to what was said by the husband to some other person in the presence of the wife. Bowen v. Bowen, 182 Ga. 299 (5), 185 S.E. 312 (1936).

It is ordered, therefore, that the deposition proceed, but solely upon the condition that all copies thereof, when transcribed, be sealed and delivered to the Clerk of this court, and that the contents thereof be not divulged or disclosed by either of the parties or their counsel to any other person or persons pending a ruling by the court as to what portions of such deposition, if any, shall be admitted in evidence.

The other discovery matter now before the court is a renewed motion by the plaintiff that it be permitted to take the deposition of Fernand Habegger as the "managing agent" of defendant Belting Incorporated, on notice and pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. A previous motion to compel the deposition of this witness as a "director" of Belting Incorporated was denied. See order of August 30, 1968. At that time no effort was made to compel Habegger's deposition as a managing agent. All the court held at that time was that the mere fact that Habegger was a "director" of a Delaware corporation would not subject him to a deposition as its representative upon notice and pursuant to Rule 26(a). Plaintiff now renews its motion to take his deposition on notice and says that it has learned, for the first time, that the defendant Belting Incorporated, in its original answer, alleged that Habegger was the "chief executive officer" of the corporation. Plaintiff seeks to treat this allegation as a solemn admission *in judicio* that Habegger is the "managing agent" of the corporation. It is true that the answer of Belting Incorporated contained such an allegation. It is also true that such an allegation, so long as it remains a part of the pleading, is conclusive upon the pleader. See 71 C.J.S. Pleading § 59 et seq. Defendants contend, however, that this statement in the answer was

684

made by inadvertence and never represented the true facts. They have consequently filed an amendment to their answer seeking to withdraw this allegation. See 71 C.J.S. Pleading § 60. The proposed deponent, Fernand Habegger, may indeed be a managing agent. On the other hand, he may not. The question of what constitutes a managing agent has given the courts considerable difficulty. See 4 Moore, Federal Practice, § 26.07 and notes. In the present state of the record the court concludes that whether the proposed deponent is a managing agent should be determined on the basis of facts presented, not on the basis of mere labels. The renewed motion to take his deposition on notice is therefore denied, but with the proviso that the plaintiff shall have the privilege of showing, if it can, that Habegger's actions, transactions, contracts, sales and negotiations on behalf of the corporation do make him in fact its managing agent. Upon such a showing, the deposition will be permitted.