MITSUI & CO. (U.S.A.) INC., Plaintiff,

v.

PUERTO RICO WATER RESOURCES
AUTHORITY, Defendant.

Civ. No. 76–1393.

United States District Court,
D. Puerto Rico.

June 2, 1978.

Fiddler, González & Rodríguez, San Juan, P. R., Ronald A. Cohan, Pettit, Evers & Martin, Los Angeles, Cal., for plaintiff.

Luis A. Lugo, Jr., San Juan, P. R., Kenneth M. Cushman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This case involves a claim for Thirty Million Dollars for losses and for damages allegedly suffered by plaintiff due to defendant's breach of contract. It is now before the Court a motion for a protective order filed by plaintiff's New York accountants upon a notice of deposition and production of documents served on them by defendant and defendant's motion to compel the plaintiff to produce its tax returns and other tax

related documents in the possession of its New York accountants. Extensive memoranda have been filed by both parties and non-party, Haskins & Sells, after which the matter stands submitted for decision.

On June 20, 1970, Mitsui & Co. (U.S.A.) Inc. ("Mitsui"), entered into a contract with Puerto Rico Water Resources Authority, ("PRWRA"), for the construction of a Steam Electric Station in Puerto Rico, ("Aguirre Project"). Subsequently, Mitsui allegedly assigned this contract, on a commission basis to Mitsui & Co., Ltd., which in turn, subcontracted to Taihei Dengyo Kaisha, Ltd. the actual construction of the Aguirre Station. The completion of this project took several years after which this action was brought.

Discovery is already underway. The success achieved at this stage of the proceedings would be the keystone for a just and speedy resolution of this case.

On February 28, 1978, Mr. James K. McConville, the Assistant Treasurer and Assistant Manager of the Tax Department of Mitsui, was deposed by PRWRA in New York. During the deposition, Mr. McConville testified that their profits, if any, on the Aguirre Project, were based upon the anticipated cost of materials and supplies and would not be affected by the cost of construction, (Tr. p. 179). Mr. McConville claimed ignorance of the alleged assignment of the construction contract to Mitsui & Co., Ltd. and that they would receive a commission on the sale, (Tr. p. 65). Mr. McConville stated that he was unable to testify concerning the method of preparing Mitsui's balance sheets but that their accountants would be able to explain the computation, (Tr. p. 143). He stated that he was also unable to testify as to whether Mitsui reported profits or losses on the Aguirre Project in their tax returns. Mr. McConville testified that he was the liaison between Mitsui and Haskins & Sells, and that the members of Haskins & Sells most intimately involved with the taxation and accounting aspects of the Aguirre Project were located now and during the entire period in New York, (Tr. pp. 42, 143). Mr.

McConville identified Messrs. Donald P. Kipp, Jr., Frank H. Tiedemann and Seymour F. Bernstein, New York accountants, partners of Haskins & Sells' New York office, as the individuals most familiar with the tax and accounting arrangements for the Aguirre Project.

As a result of this disposition, PRWRA requested from Mitsui the production of their income tax returns, both United States and Puerto Rico, for the Years 1970 through 1976. Mitsui refused to produce said documents or execute a waiver of production of tax related documents in the possession of their New York accountants as required by Section 301.7216–3 of the Internal Revenue Regulation.

Defendant further served upon Messrs. Donald P. Kipp, Jr., Frank H. Tiedemann and Seymour F. Bernstein (hereinafter referred to as "Haskins & Sells"), of Haskins & Sells' New York Office, notice of oral depositions to be held in New York and were directed to bring with them

". . . all documents relating or referring to accounting and/or taxation treatment, methods, procedures, calculations and/or handling, proposed or actually used in connection with Mitsui & Co. (U.S.A.), Inc.'s construction contract with the Puerto Rico Water Resources Authority for construction of the Aguirre Project, covering the period from January 1st, 1970 to the present."

After informal objections to the production of tax related documents, Haskins & Sells finally filed, on April 13, 1978, a motion for protective order and notice of objections to the scope of the proposed discovery. They objected to the oral depositions and production of documents on the following grounds: (1) the information requested is privileged under the provisions of Section 19 of Puerto Rico's Public Accountancy Act of 1945, Title 20, L.P.R.A., Section 790; (2) they are barred from disclosing the information requested by Section 7216 of the Internal Revenue Code of 1954 and Section 301.7216 of the regulations thereunder and, moreon, (3) the request for production of documents is overbroad, un-

duly oppressive and patently irrelevant and immaterial.

PRWRA opposed Haskins & Sells' request for protective order alleging that: (1) Puerto Rico accountants' privilege statute is not applicable to communications held by New York accountants with New York clients in New York; (2) Section 7216 of the Internal Revenue Code allows their disclosure upon an order of the Court; and (3) further, because the subpoena *duces tecum* is sufficiently specific, is not burdensome or oppressive and although a non-party deponent may not object to a subpoena *duces tecum* on grounds of relevancy, the documents requested are relevant.

Mitsui further objected to the request for production of its income tax returns because PRWRA had failed to show (1) a compelling need for its disclosure, and (2) that the tax returns would reflect relevant information not reasonably obtainable from other sources.

The issues raised by these two motions could be resumed in two, as follows: the applicability of Puerto Rico accountants' privilege statute to the communications sought to be disclosed, and disclosure of these communications, documents and income tax returns under Section 7216 of the Internal Revenue Code.

## APPLICABILITY OF PUERTO RICO ACCOUNTANTS PRIVILEGE STATUTE TO THE DEPOSITIONS HEREIN ANNOUNCED:—

Defendant herein seeks to obtain by deposing plaintiff's New York accountants, all documents and communications in relation to the accounting and/or taxation treat-

ment used in connection with the construction contract of the Aguirre Project.

Messrs. Kipp, Tiedemann and Bernstein are all certified public accountants according to the laws of the State of New York, and have been at all times pertinent herein practicing their profession as members of Haskins & Sells' New York Office in New York. Plaintiff is a corporation organized and existing under the laws of the State of New York with principal place of business in New York. The accounting and taxation matters of Mitsui have been handled in New York by the above named public accountants and Mr. McConville from Mitsui's offices in New York. Therefore, all of the documents and communications sought to be disclosed herein occurred and were executed in New York. The deposition of these three New York accountants would be held in New York. New York does not recognize an accountant-client's privilege. Puerto Rico does have one embodied within the government's regulation of the public accountant profession.[1] This case is before this Court due to the diversity of citizenship of the parties.

■ It is well settled that under the diversity of citizenship jurisdiction of this Court, we are bound to apply the substantive law of the state where we sit. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Before the approval of the Federal Rules of Evidence, the weight of authority seemed to be that state privileges involve "substantive" rights conferred by state law and under the mandate of *Erie*, supra, the state law of privilege must be applied.[2] *Republic Gear Co. v.*

---

**1.** Section 19 of the Puerto Rico's Public Accountancy Act of 1945, Title 20, L.P.R.A., Section 790, provides that:

"No court shall require a certified public accountant or public accountant to divulge information or evidence obtained by him in his confidential capacity as such."

**2.** Rule 501 of the Federal Rules of Evidence codified this case law and provided that:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority,

the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

*Borg-Warner Corp.*, 381 F.2d 551 (2nd Cir., 1967). This requirement was equally applicable to discovery matters. *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D.Mass., 1976); *R & J Dick Co. v. Bass*, 295 F.Supp. 758 (N.D.Ga., 1968).

The problem arises when the deposition is to be taken out of the forum state and either of the two states does not recognize the privilege. Which law would the Federal court sitting in a diversity case apply? Conflictive answers and different legal theories arise from this question. It has been characterized as "among the most difficult questions a Federal judge can be called upon to answer." [3]

There are not many cases in this issue and they are not very illustrative either. Under the rule of *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Federal court was bound to apply the conflict rules of the state in which it sits: Rule 37(a) of the Federal Rules of Civil Procedure allowed that an application to compel disclosure against a non-party witness be made either to the Federal court where the action was pending or to the Federal court in the district where the refusal to answer occurred, and Rule 43(a) of the Federal Rules of Civil Procedure provides that the law of the forum state determines admissibility. Also, other considerations of comity and full faith and credit intertwined in the decision-making process.

The combination of all these elements of decision produced conflictive resolutions to the problem making it impossible to draw out a clear and uniform decisory trend with even tenor results. The fact is that each party to this case cites the same set of cases in support of their respective conflictive positions.

Let us examine these cases quickly. In *Ex parte Sparrow*, 14 F.R.D. 351 (N.D.Ala., 1953), plaintiff brought a libel action in New York, which, at the time, recognized no journalist's privilege. Sparrow's deposition was to be taken in Alabama, the State of most significant relationship which did protect such information. The Court felt that in the absence of any Federal privilege rule, the Alabama public policy in favor of recognition should prevail. The Court reached this conclusion by applying the law of the forum which the Court found to be that of the deposition state for purposes of the privilege determination under Rule 37(a) of the Federal Rules of Civil Procedure. 14 F.R.D. at p. 353. See also: *R & J Dick Co. v. Bass*, supra, where the court of the forum state, Georgia, applied the privilege law of the deposition state, Pennsylvania, because Pennsylvania's law reflected a strong public policy in light of which the Pennsylvania's court would probably not allow the deposition to proceed if the application to compel discovery would have been brought there.

In *Palmer v. Fisher*, 228 F.2d 603 (7th Cir., 1955), the main action was pending in Florida, but Fisher sought to secure the testimony of Pierce, an Illinois accountant, on deposition in Illinois. Pierce asserted the Illinois accountant-client privilege and the court held that Illinois' law applied. The court arrived at this conclusion by noting that a proceeding to suppress a deposition was an independent action under Rule 37(a) of the Federal Rules of Civil Procedure, thus making Illinois the forum state. 228 F.2d at 608–09.

In *Application of Cepeda*, 233 F.Supp. 465 (S.D.N.Y., 1964) a libel action by baseball star Orlando Cepeda against the publisher of the Look Magazine, which was pending in the California Federal courts, a magazine writer deposed in New York sought to invoke California's journalists privilege in refusing to answer questions. The U.S. District Court for the Southern District of New York ruled that the law of the trial state (which had a privilege statute) prevailed over the law of the deposition state (which had no such provision), on the other theory that the trial state had a more clear-

---

3. "The Federal Rules of Evidence: Rule 501 Klaxon and the Constitution", *5 Hofstra L.Rev.* 21, 24 (1976); Note, . . . Cases", Privilege in Federal Diversity Cases, 10 *Nat.Res.J.* 861 (1970).

ly defined and enunciated public policy. This case has been generally used for the proposition which favors the recognition of the privilege if either of the two states have it under the full faith and credit clause. See: "Privilege Communication under Rule 26(b): Conflict of Laws in Diversity Cases", 23 *U.Chi.L.Rev.* 704 (1956).

In *Hill v. Huddleston*, 263 F.Supp. 108 (D.Md., 1967), an action was pending in the Eastern District of Tennessee when defendants sought to depose a psychiatrist in Maryland. The deponent refused to answer upon Maryland's privilege statute. Maryland's Federal court applied the law of the deposition state since under Maryland's conflict of laws rule, it would apply the law of the state which has the most significant relationship with the communication.[4]

However, in *Hare v. Family Publications Services, Inc.*, 334 F.Supp. 953 (D.Md., 1971), the same Federal district court in Maryland refused to apply the law of the state with the most significant relationship with the communication (which did not recognize the privilege) since requiring disclosure would violate Maryland's public policy (which did have the privilege). It reasoned that comity between the states does not require the Maryland courts to enforce a law or public policy of a sister state when such action would violate the public policy of Maryland. Thus, frustrating the well founded doctrine of the state with the most significant relationship with the communication.

Finally, in *Hyde Construction Co. v. Koehring Co.*, 455 F.2d 337 (5th Cir., 1972), the litigation took place in Mississippi and arose from torts committed in that state and Oklahoma by defendant, a Wisconsin corporation. Defendant claimed that Mississippi's attorney-client privilege protected certain documents from disclosure, while plaintiff asserted that Wisconsin privilege law should control since defendant's legal efforts were directed by house counsel located in Wisconsin. The court, however, used a single "center of gravity" test for both the substantive and the privilege issues in the case and concluded that the law of Mississippi, the center of gravity of the transaction object of the civil suit, should apply.[5]

From all of these cases, we can not point out a uniform rule to follow for reaching a decision in our case. In the case at bar, the forum state recognizes the privilege while the deposition state does not. According to *Ex parte Sparrow*, supra, and *Palmer v. Fisher*, supra, we would not apply Puerto Rico's privilege statute to a deposition taken outside of Puerto Rico. If we follow *Application of Cepeda*, supra, we would apply the privilege law of Puerto Rico in view of New York's failure to recognize the privilege. In accordance with *Hill v. Huddleston*, supra, of Maryland, we should apply the law of New York which is the state with the most significant relationship with the communication; however, *Hare v. Family Publications Services, Inc.* would compel us to apply the law of Puerto Rico since New York does not recognize the privilege and requiring disclosure will go against the public policy of Puerto Rico. Finally, if we approach the problem as in *Hyde Construction Co. v. Koehring Co.*, supra, we would apply the "grouping of contacts" test recognized in Puerto Rico,[6] in which case we would conclude that the subject matter of this litigation has more contacts with this forum than with New York and Puerto Rico privilege statute should, therefore, govern.

Rule 501 of the newly approved Federal Rules of Evidence is of no help either in this conflict of law problems. See: *In re West-*

---

4. Further studies have demonstrated that this is the best approach to the problem. See: "The Federal Rules of Evidence: Rule 501 Klaxon and the Constitution", *5 Hofstra L.Rev.* 21 (1976); "Testimonial Privilege: An Analysis of Horizontal Choice of Law Problems", 61 *Minn.L.Rev.* 461 (1977); Restatement (Second) of Conflict of Laws, Sec. 139 (1971).

5. The Court erroneously applied the center of gravity of the subject matter of the suit to the privilege question. See: "Testimonial Privileges," supra, 61 *Minn.L.Rev.* at p. 483.

6. *Green Giant Co. v. Superior Court*, 104 D.P.R. 489 (1975).

*inghouse Electric Corp.*, 76 F.R.D. 47, 53 (W.D.Pa., 1977).

In search for a flexible rule which at the same time would bring out uniform results easily to be followed, we ran into the "new" "interest analysis methodology" within the modern developments in the area of choice of law problems,[7] which as we stated before seems to be the most desirable approach to this conflict of law problem.

This new approach considers the interests of the parties to the relationship, as well as of the deposition state, of the forum state and of the state where the communication occurred, departing from the old inflexible forum-oriented rule.[8] In the majority of the cases, this "interest analysis" would compel us to conclude that the state in which the assertedly privileged relationship was entered and exclusively sited should be deemed to have the most significant interest in determining whether or not that relationship is privileged. The proposition behind this "interest analysis" test is that "a state's decision to extend (or withhold) a privilege with regard to a relationship existing exclusively within that state should not be disregarded by any other state, whether forum or deposition state". *Id., 5 Hofstra L.Rev.*, at pp. 33–34. Since the judicial conclusion that the privileged nature of the relationship entered and existing exclusively in one state should be determined by the application of the dispositive law of some other state would frustrate (1) the potential expectations of the parties to the relationship; (2) the interest of the situs state in regulating the relationship, and (3) the political capacity of citizens of the situs state to determine the nature of the relationship in that state. *Id., 5 Hofstra L.Rev.*, at p. 35.

■ Therefore, when we are faced with a choice of law problems in the area of privileged communications, we must consider the following factors:

1) The place where the communication occurred and the relation of the parties to this communication with the state where it occurred.

2) The public policies underlying the particular privilege statute invoked.

3) The interest of the situs state in preserving or not the confidentiality of this communication.

4) The interest of the forum state in preserving or not the confidentiality of this out of state communication.

In the case at bar, a foreign corporation seeks to recover damages from a forum state's public corporation for breach of a contract for the construction of public works. Defendant is seeking to disclose, through depositions in New York, the communications sustained by the New York corporation with its New York accountants in New York in relation with the accounting and taxation of this public works construction contract. New York does not recognize an accountant-client privilege; Puerto Rico does. New York accountants thus refuse to answer defendant's request relying upon Puerto Rico's accountant privilege statute.

■ This accountants' privilege, as any other privilege, is an exception to the general rule that the public is entitled to any man's evidence. There is no federally created accountant-client privilege or a recognized state created privilege in Federal cases. *Couch v. U. S.*, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972); *Falsone v. U. S.*, 205 F.2d 734 (5th Cir., 1953), cert. den. 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375; Rule 501 of the Federal Rules of Evidence. It has been even looked upon with dismay since the benefits gained by the accountant-client relationship due to the privilege are

---

**7.** See: "The Federal Rules of Evidence: Rule 501 Klaxon and the Constitution", *5 Hofstra L.Rev.* 21 (1976); "Testimonial Privilege: An Analysis of Horizontal Choice of Law Problems", 61 *Minn.L.Rev.* 461 (1977); Restatement (Second) of Conflict of Laws, Sec. 139 (1971); see also: *In re Westinghouse Electric Corp.*, 76

F.R.D. 47, 54 (W.D.Pa.1977); *Maryland Casualty Co. v. San Juan Racing Assn.*, 83 P.R.R. 438, 544 (1961); *Bonn v. Puerto Rico Int'l Airlines, Inc.*, 518 F.2d 89, 91–92 (1st Cir., 1975).

**8.** See: Advisory Committee's Note to Rule 501.

slight and do not exceed on balance the injury that would inure to the effective administration of justice. Evidence—Privileged Communications—Accountant Client, 46 North Carolina L.Rev. 419, 427 (1968). Only sixteen states and Puerto Rico have enacted accountant-client privilege statutes. Notes, "Privileged Communications—Accountants and Accounting—A Critical Analysis of Accountant-Client Privilege Statute", 66 *Mich.L.Rev.* 1264 (1968). Some commentators have suggested the approval of narrow accountant client privilege statute in all states to discourage forum shopping. Notes and Comments, Evidence: "The Accountant-Client Privilege under Federal Rules of Evidence—New Statute and New Problems," 28 *Okla.L.Rev.* 637 (1975).

■ The accountant-client privilege rests almost exclusively on the states' desire to encourage the full disclosure of information in the relationship. Puerto Rico, in its regulation of the public accountant practice within its territory, was most concerned with insuring full disclosure to Puerto Rican accountants so that their professional services would be of the highest quality.

New York, instead, does not recognize the privilege since it was more concerned with the full disclosure of all relevant and otherwise admissible evidence, thus, improving the accuracy of the fact finding process and the administration of justice.[9]

■ The accountants sought to be deposed in the case at bar, are licensed and practicing in the State of New York. They know the rules of privilege that apply to their work since they are part and parcel of the regulation by the State of New York of their profession. In our case, New York was the situs of the communication, not by mere chance, but because plaintiff is a New York corporation with main offices there.[10] Therefore, choosing the full disclosure of their communication comports with the ex-

pectations of the parties to the relationship and the New York interest against the confidentiality of this communication.

Besides, Puerto Rico has no legitimate interest in maintaining the confidentiality of accountant-client communications held wholly in New York, between New York citizens. On the contrary, Puerto Rico's interests would be best served by allowing the disclosure sought by a public corporation in Puerto Rico thus, obtaining relevant information for the fast and just resolution of the case at bar.

Moreover, following the Supreme Court of Puerto Rico's approach to the conflict of law problems faced in *Green Giant Co. v. Superior Court*, we would reach the same conclusion. New York is the state with the most significant relationship with the communication and, thus, most interested in its regulation. To impose Puerto Rico's privilege law to this communication would constitute an unconstitutional exercise of legislative power. *Id.*, at pp. 500–501; see also: *Levy v. Mutual Life Insurance Co.*, 56 N.Y. S.2d 32 (Sup.Ct.1945); *In re Franklin Washington Trust Co.*, 1 Misc.2d 697, 148 N.Y. S.2d 731 (Sup.Ct.1956); "The Federal Rules of Evidence", supra, 5 *Hofstra L.Rev.*, at p. 48; *Baylor v. Mading-Dugan Drug Co.*, 57 F.R.D. 509, 512 (N.D.Ill., 1972).

## SECTION 7216 OF THE INTERNAL REVENUE CODE:—

Since disclosure of the tax related matters of Mitsui in connection with the Aguirre Project by their New York accountants is not barred by Puerto Rico's privilege statute, we must consider whether it is allowed under Section 7216 of the Internal Revenue Code of 1954.

This Section 7216 provides that:

"(a) General rule—Any person who is engaged in the business of preparing, or providing services in connection with the preparation of, returns of the tax im-

---

9. "When a state has a strong public policy favoring testimonial compulsion, how can it express that policy except by omission of a privilege statute?" "Testimonial Privileges:", supra, 61 *Minn.L.Rev.* 461, at 502 (1977).

10. See: Vol. 2 Weinstein's Evidence, Sec. 501.-02 (Ed.1977).

posed by chapter 1, or declarations or amended declarations of estimated tax under section 6015, or any person who for compensation prepares any such return or declaration for any other person, and who—

(1) discloses any information furnished to him for, or in connection with, the preparation of any such return or declaration, or

(2) uses any such information for any purpose other than to prepare, or assist in preparing, any such return or declaration, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than 1 year; or both, together with the costs of prosecution.

(b) Exceptions.—

(1) Disclosure.—Subsection (a) shall not apply to a disclosure of information if such disclosure is made—

(A) pursuant to any other provision of this title, or

(B) pursuant to an order of a court.

(2) Use.—Subsection (a) shall not apply to the use of information in the preparation of, or in connection with the preparation of, State and local tax returns and declarations of estimated tax of the person to whom the information relates.

(3) Regulations.—Subsection (a) shall not apply to a disclosure or use of information which is permitted by regulations prescribed by the Secretary under this section."

█ This Section 7216 is primarily oriented to discourage the misuse of confidential information received by nonprofessionals preparing tax returns.[11] It does not apply to information used in the preparation of, or in connection with, the preparation of state tax returns, nor does it apply when the disclosure is ordered by the court. Section 7216(b)(1)(B) and (b)(2) of Title 26, United States Code; 1971 U.S.Code Cong. & Admin.News, at pp. 1825, 2068.

The statute does not limit the Court's power to require disclosure of tax related information under appropriate circumstances.

█ Rule 26 of the Federal Rules of Civil Procedure provides, in its pertinent part, that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . ." The scope of discovery provided by this Rule is to be liberally construed so as to provide both parties with information essential to proper litigation on all the facts. *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352–53 (S.D.N.Y., 1973); *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir., 1961).

█ Tax returns and related documents do not enjoy an absolute privilege from discovery. *Biliske v. American Live Stock Ins. Co.*, 73 F.R.D. 124 (W.D.Okl., 1977); *Heathman v. U. S. Dist. Ct. for Cent. Dist. of Calif.*, 503 F.2d 1032, 1035 (9th Cir., 1974); *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561 (D.C.Ill., 1976); *Maldonado v. St. Croix Discount, Inc.* 77 F.R.D. 501 (D.C.V. I., 1978). However, due to the sensitive information contained therein and the public interest to encourage the filing by taxpayers of complete and accurate returns, their production should not be routinely required. *Troglione v. McIntyre Aviation, Inc.*, 60 F.R.D. 511 (W.D.Pa., 1973); *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir., 1975). And despite the fact that a showing of good cause for the production of a federal tax return is no longer required, see Title 28, United States Code, Rules 26–37, Advisory Committee's Explanatory Statement, 147–48; 4A Moore's Federal Practice, Sec. 34.05(3) (2d ed. 1975); *Shaver v. Yacht Outward Bound,* supra, at p. 564, Federal courts have been cautious in ordering the disclosure of tax returns insisting, at the very least, that it

---

11. "Comment, Why Regulate Tax Return Preparers?" *53 Neb.L.Rev.* 94 (1974); see also:

*Beneficial Corp. v. F. T. C.*, 542 F.2d 611 (3d Cir., 1976).

reasonably appear they are relevant and material to the matters at issue. In some cases, it has been held that production of a tax return should not be ordered unless there appears to be a compelling need for the information it contains, such as is not otherwise readily obtainable. *Shaver v. Yacht Outward Bound*, supra, at p. 564; *Payne v. Howard*, 75 F.R.D. 465 (D.C.D. C., 1977); *Federal Savings and Loan Insurance Corp. v. Krueger*, 55 F.R.D. 512 (N.D. Ill., 1972); *Biliske v. American Live Stock Ins. Co.*, supra.

The Courts have required disclosure of tax returns when the taxpayer himself has made an issue of his income. *Biliske v. American Live Stock Ins. Co.*, supra, at p. 126 n. 1; *Payne v. Howard*, supra, at p. 470; *Shaver v. Yacht Outward Bound*, supra; even under the old "good cause" requirement, see: *Keco-Indus., Inc. v. Stearns Electric Corp.*, 285 F.Supp. 912 (E.D. Wis., 1968). Or as where access to tax returns (and tax related information) is necessary to replace "lost, destroyed or otherwise unavailable" sources of information to determine accurately the relationship of co-defendants in a "entangled network of individuals, corporations and other legal entities." *Heathman v. U. S. District Ct.*, supra, at 1032–1033.

■ Plaintiff herein is claiming over thirty million dollars for losses and damages suffered in the performance of the construction contract of the Aguirre Project due to defendant's alleged noncompliance with their obligations under the contract. It now alleges that the construction contract was assigned to its parent corporation which subcontracted the actual construction work and that on account of it, Mitsui virtually suffered no losses at all which its income tax returns could show. Defendant seeks to obtain, through the requested documents now challenged, relevant information as to the following issues: (1) whether Mitsui suffered any damages on the Aguirre Project, (2) whether Mitsui is the real party in interest in the present litigation, (3) whether Mitsui has standing to sue, and (4) whether Mitsui breached the assignment clause of its contract with PRWRA.

Plaintiff has clearly put at stake its income and its standing to file this suit in its own name so to waive any right it may have to maintain undisclosed its tax returns' matters. Mitsui could not claim losses over thirty million dollars and successfully evade disclosing its tax returns by now claiming that the losses were suffered by others. It has certainly made them relevant for the full disclosure of the facts involved.

Plaintiff alleges that it has already supplied all the relevant information that the tax returns would produce and that their disclosure should not be allowed to check only the accuracy of the other information. See: *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556 (S.D.N.Y., 1964).

Mr. McConville, one of Mitsui's chief executives in tax matters stated that he had no knowledge about the alleged assignment of the construction contract. He turned to Mitsui's New York accountants for all relevant information about the accounting and/or taxation of the Aguirre Project. Plaintiff and defendant have exchanged innumerable documents, most of them in Japanese. Defendant has tried to determine the extent of Mitsui's damages from these documents, but due to their volume and nature, they could not be easily determined with a degree of accuracy. Moreon, the tax returns and tax related documents could easily shed light upon the bind of relation existing between the different parties involved in the construction of this project and most of all it would shed light upon the role Mitsui's played in this whole project and its standing to file this suit. Certainly, the magnitude of the losses claimed in this case makes every document which could reasonably help to illuminate the facts involved relevant and discoverable. See: *Biliske v. Am. Live Stock Ins. Co.*, 73 F.R.D. 124 (W.D.Okl., 1977).

The subpoena *duces tecum* addressed to Haskins & Sells requires them to produce "*all* documents" related with the accounting and taxation treatment of "Mitsui & Co. (U.S.A.), Inc." "construction contract with

the PRWRA for construction of the Aguirre Project, covering the period from January 1st, 1970 to the present."

 Rule 34(b) of the Federal Rules of Civil Procedure provides that a request for production of documents "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity." The "reasonable particularity" requirement is not susceptible to exact definition. What is reasonably particular is dependent upon the facts and circumstances in each case. *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, supra, at p. 353. Professor Moore believes the appropriate question "is whether a reasonable man would know what documents or things are called for." 4A J. Moore, Federal Practice, Sec. 34.07, at p. 34–57. From the description of the documents made by defendant in the subpoena *duces tecum* it is clear that Haskins & Sells can reasonably identify the documents requested. They refer to a specific client, project and lapse of time.

 Furthermore, the production of these documents is not unduly oppressive and burdensome. Plaintiff's claim of thirty million dollars in damages and losses arises from the construction of a thirty million dollars public project which took around five years for its completion. Defendant has showed that all these documents have reasonable relation with the subject matter of this case to be relevant and discoverable. See: *Biliske v. Am. Live Stock Ins. Co.*, supra.

Wherefore, for all the above stated reasons, Haskins & Sells' motion for protective order and notice of objections is hereby DENIED.

We are conscious that income tax returns contain many other items and information which would not be relevant to this case and which plaintiff is not willing to disclose. Therefore, plaintiff is hereby ORDERED to produce its United States' and Puerto Rico's income tax returns, in its actual or constructive possession,[12] for an in camera inspection before the U.S. Magistrate, who will segregate all information not pertinent to our case.

IT IS SO ORDERED.

---

12. By the appropriate request to the governmental agency. See: 70 A.L.R.2d 240.