**Maurice M. MEREDITH, Plaintiff,**

v.

**BEAR, STEARNS & COMPANY, Samuel R. Shapiro, and Gordon Randolph Cox, Defendants.**

**Civ. A. No. 83–0953.**

United States District Court, District of Columbia.

Oct. 25, 1983.

J. Stuart Lemle, Washington, D.C., for plaintiff.

Robert J. Higgins, Linda Herman Mullenbach, Dickstein, Shapiro & Morin, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ARTHUR L. BURNETT, United States Magistrate.

The Court (Oberdorfer, J.) has referred to the Magistrate certain discovery disputes which have arisen between the parties to this litigation. Relevant to the resolution of the scope of discovery issues as to what is relevant to the subject matter is an examination of the allegations of the complaint and the issues as they now appear in view of the answer thereto, including affirmative defenses.

The several causes of action allege conduct by the defendants in violation of Sections 10(b) and 15(b) and (c) of the Securities Exchange Act of 1934, and related SEC rules implementing these provisions,[1] in

---

1. He has also included in his complaint, under pendent jurisdiction, a claim of a violation of D.C.Code § 2–2602 asserting the defendants employed devices, schemes and artifices to defraud him, made untrue statements of material facts to him or omitted to state material facts necessary to make the statements made not misleading, and engaged in acts, practices, and a course of business dealings with him which operated as a fraud and deceit upon him in

connection with the representations made by the defendants Gordon Randolph Cox and Samuel R. Shapiro to the plaintiff Maurice M. Meredith encouraging him to purchase, and thereafter, retain common shares of stock of USLife Corporation during the period of April 3, 1981 through August 27, 1981. Plaintiff has asserted that these representations were false and misleading and that as a result of his actions and reliance on the defendants' representations his cash investment in April of 1981 in the common shares of this company of $151,443.00, by July, 1982 had declined to $7,139.00.[2]

Specific allegations in the complaint highly relevant to the resolution of the scope of discovery to be allowed follow. Plaintiff asserts he is an "elderly, frail, retired man who has based all of his investment decisions on the advice of brokerage firms and their personnel. He has always invested in equity securities which offer medium to long term capital appreciation opportunities. Further, he never maintained a margin account for the purchase of securities other than the account created for him by defendants and was unfamiliar with its attendant obligations." (Paragraph 8 of the Complaint.) Plaintiff has also averred that as a result of the losses and declination in value of this stock, he became "physically and psychologically incapable of managing his deteriorating investment situation." (Paragraph 19 of the Complaint.) He has further asserted: "As a direct consequence of the devastating loss of assets in what he was told would be an essentially riskless investment, plaintiff has suffered irreparable psychological harm. He has required regular psychiatric attention. He has become paralyzed with fear and anxiety and rarely ventures from the shelter of his home. He has lost all confidence in his ability to cope with his daily life." (Paragraph 21 of the Complaint.) Plaintiff has demanded $150,400.00 as compensatory damages for out-of-pocket losses, interest thereon at the prevailing market rate from April 6, 1981 to date of judgment, compensatory damages of $500,000.00 for severe mental anguish and psychological pain and suffering, exemplary damages of $1,951,-200.00 for knowing and purposeful deceit as part of a scheme to defraud, costs of this suit, including reasonable attorneys' fees, and such other relief as the Court may deem just and proper.

In their Answer filed May 25, 1983, the defendants denied any false representations, fraud or deceit in their dealings with the plaintiff. They further denied that Mr. Meredith was unfamiliar with the obligations attendant to a margin account.

On September 28, 1983 counsel for the plaintiff filed a motion to modify subpoenas and for a protective order with reference to deposition subpoenas directed by the defendants to representatives of seven (7) securities brokerage firms and four financial institutions. Plaintiff requested that the Court prohibit the production of all documents in the non-public files of these individuals or their employer institutions pertaining to the plaintiff, other than those relating to the period from January 1, 1981 through September 1, 1981.[3] Plaintiff fur-

---

connection with the purchase and sale of securities of USLife Corporation. Finally, also under pendent jurisdiction, he has included a claim aggregating various common law theories for liability, i.e., common law fraud, breach of fiduciary responsibilities, negligence regarding duty of care owed by a securities broker to a client, and intentional or reckless infliction of severe mental anguish and psychological injuries.

2. Defendants have admitted that the records maintained by Bear, Stearns & Company reflect that Mr. Meredith purchased $311,575.00 of USLife stock on margin, that his original cash investment was approximately $151,-000.00 and that in July, 1982 his equity position in USLife stock was approximately $7,200.00. The defendants further admit that the stock was purchased in April, 1981 for prices ranging between $30.50 per share and $31.25 per share and by July, 1982 it was selling at approximately $15.00 per share.

3. In an accompanying affidavit, counsel asserted: "Within the last ten days, defendants have directed subpoenas to personnel at (a) seven securities brokerage firms seeking all new account forms, monthly statements, and correspondence relating to plaintiff's accounts from January 1, 1979 to date and (b) four banks seeking all account statements from January 1,

ther requested a protective order prohibiting deposition questioning (orally or in written form) of these individuals regarding the status or contents of plaintiff's securities or banking accounts with their employer institutions for any time period other than January 1, 1981 through September 1, 1981, with the exception of questions relative to (a) any margin accounts plaintiff may have maintained with their organization prior to April 1, 1981 for the purchase of securities and (b) any arbitrage investments plaintiff may have made through their organization for more than $150,000.00.

Counsel, in his affidavit, argued that obtaining information about Mr. Meredith beyond the scope he outlined would be an unreasonable and unnecessary invasion of Mr. Meredith's privacy and would not be relevant to the issues in this case, citing *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979), stressing that district courts should not neglect their power to restrict discovery where justice requires protection for a party from annoyance, embarrassment, oppression or undue burden or expense. He has further argued that the trial court must approve the reasonableness of the subpoena by balancing the possibility of exposing relevant information against "the incalculably precious right of the citizen to be let alone ... in the absence of evidence that the material sought is relevant ... and [must determine] that, under the law, there is justification for the invasion of the individual's treasured privacy," citing *Herron v. Blackford,* 264 F.2d 723, 725 (5th Cir.1959).

Defendants have opposed this motion arguing that the allegations in the complaint and discovery already conducted [4] make the

information sought by their deposition subpoenas relevant to Mr. Meredith's fraud claims, his reliance on the investment advice he received from the defendant Cox, and the impact his reverses with reference to the USLife Corporation stock had on him in view of his prior sophistication and experience in stock investments and the securities market and what his activities have been since July, 1982 to date with reference to his claim for "severe mental anguish and psychological pain and suffering" for $500,-000.00.

The Magistrate agrees with the position taken by the defendants and concludes that the scope of its deposition subpoenas are most reasonable in the context of the factual issues raised concerning Mr. Meredith's prior stock market experience and sophistication, his reliance on what he was told by Messrs. Shapiro and Cox, and the impact thereof on his current mental and emotional condition, and whether any such condition is causally related to his stock market activities—both his successes and his failures. Where issues of sophistication and reliance lie at the heart of a case, the courts have consistently considered prior and subsequent securities transactions of a plaintiff to be properly discoverable under Rule 26(b), F.R.Civ.P. *Fine, et al. v. Grossman, et al.,* No. 80 Civ. 4771–CSH, slip opinion, (S.D.N.Y.1982). *See also Smith v. Bader,* 83 F.R.D. 437 (S.D.N.Y.1979); *Mitsui & Co. v. Puerto Rico Water Resources,* 79 F.R.D. 72 (D.P.R.1978); *Weiner v. Bache Halsey Stuart, Inc.,* 76 F.R.D. 624 (S.D.Fla.1977). While the plaintiff may not have directly placed in issue his income, he certainly has placed in issue his stock market investment

---

1981 to date and all documents relating to safety deposit box and loan applications from January 1, 1979 to date regarding plaintiff. Said subpoenas also served notice of defendants' intention to take the deposition of the addressees, although excusing all but two of them from appearing if the subpoenaed documents are produced prior to the scheduled date of the deposition."

**4.** Plaintiff in a reply has claimed that counsel for the defendant has mischaracterized some of the information claimed to have been devel-

oped in discovery, including in plaintiff's deposition concerning his investment practices and information to the effect that he has engaged in investment in highly speculative and extremely risky securities. But that is what the deposition subpoenas at issue will independently attempt to reveal and confirm. Defendants have the right to seek information from the seven securities brokerage firms to determine independently from what Mr. Meredith has stated what types of investments he has made since January 1, 1979.

sophistication and knowledge, his reliance upon what defendants Cox and Shapiro allegedly misrepresented to him,[5] and his mental and emotional condition. Further, his future earning capacity has certainly been put in issue by the allegation in paragraph 21 of his complaint that he has become paralyzed with fear and anxiety and rarely ventures from the shelter of his home and that he has lost all confidence in his ability to cope with his daily life. Thus, his investment activities since September, 1981 and his banking activities from then to the present time would be most relevant to this allegation, especially since he also seeks $500,000.00 for severe mental anguish and psychological pain and suffering, in addition to $150,400.00 in compensatory damages for out-of-pocket losses in connection with the USLife Corporation stock.

For the foregoing reasons, and based upon a review of the plaintiff's motion and accompanying affidavit, the defendants' opposition memorandum, and the plaintiff's reply, it is now hereby this 25th day of October, 1983,

ORDERED that plaintiff's motion to modify subpoenas and for a Protective Order be and is hereby DENIED; and it is further,

ORDERED that the defendants' request for an award of costs, reasonable expenses and attorneys' fees in opposing the said motion be and is hereby DENIED as plaintiff's motion was not so unreasonable or unjustified as to warrant this sanction and did not seek to foreclose *all* discovery from the brokerage firms and banks.

---

**5.** In his complaint he asserts "total reliance" upon the unqualified representations of material facts made by defendant Cox, alleged to have been based on defendant Cox's personal knowledge of those facts.